(No. 21762.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES WINCHESTER, Plaintiff in Error.

*Opinion filed April 22, 1933.*

238

Ernest R. McHale, for plaintiff in error.

Otto Kerner, Attorney General, L. P. Zerweck, State's Attorney, and J. J. Neiger, (Curt C. Lindauer, and John T. Thomas, of counsel,) for the People.

Mr. Justice Duncan delivered the opinion of the court:

Plaintiff in error, Charles Winchester, (herein called defendant,) was indicted, tried and convicted in the circuit court of St. Clair county for the murder of Emil Kirsch. By the verdict of the jury his punishment was fixed at death. His motion for a new trial was overruled, and he has sued out of this court a writ of error for a review of the record.

As shown by the witnesses W. W. Boyne, the coroner, who was also by profession a physician, and Henry Daut, drug clerk, the evidence presented for the People is substantially as follows: The deceased was a barber, who worked in a barber shop located a few doors from the drug store. A few minutes before 8:00 o'clock on the morning of June 6, 1932, he went into the drug store and near the soda fountain in the front part of the store was engaged in conversation with the drug clerk when a man entered the drug store and asked for a coca cola. While the clerk

was preparing the drink this man flourished an automatic pistol and said, "Get to the back, both of you." Daut stooped down behind the counter or show-case and started toward the back of the store. Before he got back of the prescription case three shots were fired and a fourth shot was fired after he got there. He got a pistol and came back to the front part of the store. The deceased was lying on the floor. The man who had ordered the drink and who did the shooting was leaving the store. He and another man that the evidence tended to show was Melvin Watson, who was jointly indicted but not tried with the defendant, ran north on Fifteenth street and turned left into an alley known as Division avenue. Daut fired three shots at them as they ran along the sidewalk on Fifteenth street and he then went back into the drug store. The deceased was killed by a bullet fired from an automatic pistol that entered the back of his neck, severed the jugular vein and came out over the right nipple. There is no doubt, under the evidence, that the man who ordered the coca cola shot and killed the deceased. At the trial Daut identified the defendant as being that man. He also examined an automatic pistol put in evidence by the People and stated that he had a fairly good look at it when the man drew it in the drug store, and witness stated that it looked like the same one that was fired in the drug store by the defendant. He further testified that he did not see or notice that anyone else was in the drug store when the shooting occurred except Kirsch, the barber, the man who fired the shots, and himself; that Kirsch and the witness were about five feet apart when the man started shooting, and that Kirsch started to the back part of the drug store when the man shooting gave the order, "Get to the back, both of you."

Samuel Hamm, a witness for the People, testified substantially as follows: He started to enter the drug store at about eight o'clock on the morning the deceased was killed. A man standing near the entrance, who was wearing a pink

shirt, said to witness: "You better not go in there; you will get into trouble." Witness kept on going and "got pretty near half way of the building inside and a shot rang out." He looked up and saw Kirsch and the man who was doing the shooting and the druggist. He identified the defendant as the man who was doing the shooting and who was then sitting in the court room, behind his attorney. He had known him six or seven years, and the defendant lived in St. Louis when he first got acquainted with him. Witness had been in East St. Louis for the last two years, and the last time he saw the defendant was in January or February, 1932, when he met him with Troy Maloney, and he had only seen the defendant twice since he moved from St. Louis. When he stepped into the drug store the defendant was standing with a gun drawn on the druggist. The druggist ducked down. The defendant fired the first shot at the druggist and then turned and shot at Kirsch, who fell when the fourth shot was fired. The shooting excited witness and he got out of the drug store as fast as he could. He was the first one out of the drug store, and when he got out he ran north up the street, and while he was running up the street someone fired a shot in the direction he was going.

William Garvey, the proprietor of a gasoline and oil station located on Fifteenth street, across the street from the drug store, testified that he heard three or four shots fired in the drug store and then saw Watson, the man wearing a pink shirt, run out of the drug store, followed by a man who looked like the defendant. When four shots were fired Watson came out of the drug store, and the next man fired two shots "backing out." Witness saw his back and side of his face and testified that the defendant looked like that man. Watson ran north on Fifteenth street, then west on Division avenue, the alley. On cross-examination witness stated that he did not see Hamm there. He saw two men run down the street.

A short distance west of Fifteenth street there is an alley that runs from Broadway to Division avenue. Clara Lewis, who lives at the intersection of this alley and Division avenue, testified that on the morning of June 6, 1932, she saw two men run from Division avenue south in the alley and stoop and then throw something in the basement window of a building; that one of these men, Watson, came back north in the alley, and the other man, who looked like the defendant, went on down the alley to Broadway. Two automatic pistols were found in the basement window referred to by this witness in her testimony.

Watson was arrested shortly after the shooting. The defendant was arrested at about eleven o'clock of that morning, at the home of Eddie Cox, at 221 North Seventh street, in East St. Louis. Cox, as a witness for the People, testified that the defendant came to his house at about 8:30 o'clock on that morning.

The defendant did not testify, and the only testimony in his behalf was that he was in the county jail of St. Clair county from December 20, 1931, to June 3, 1932, which evidence was introduced as impeachment of the testimony of Hamm, who had testified that he saw the defendant on a street in East St. Louis in February, 1932.

It is contended by the defendant that the record shows that he did not have a fair and impartial trial. In this connection the first matter referred to is a statement made by the State's attorney to the jurors during the examination of them on their *voir dire,* that it would be their duty, if the evidence showed "a murder mean enough, cold-blooded enough," to return a verdict inflicting the death penalty. The bill of exceptions in this case shows that such a statement was made by the State's attorney at least three times in his examination of jurors. In the first instance no objection was interposed. In the second instance, objection having been interposed, the court said, "It is in his discretion to fix the punishment or penalty." In the third in-

stance, objection being made, the ruling was, "Sustained as to form." In a capital case it is proper for the State's attorney to inquire of jurors whether or not they have conscientious scruples against returning a verdict inflicting the death penalty, and the existence of such scruples in the mind of a juror is a proper cause of challenge. (*Gates* v. *People,* 14 Ill. 433.) It cannot be said, however, that in any case of murder it is the duty of jurors, on finding the defendant guilty, to fix the punishment at death. It was improper for the State's attorney to so inform the jurors, but in this case the court sustained the objections interposed to such statement and correctly stated that the fixing of the punishment was in the discretion of the jury.

After the evidence of the coroner had been given and the examination of the witness Daut by the State's attorney had been completed, and during his cross-examination, the attorney for the defendant asked to have other witnesses for the People excluded from the court room. The court refused to exclude the witnesses, saying, "Your request comes too late." The exclusion from the court room of witnesses waiting to be examined is a matter within the discretion of the trial court. (Bishop's New Crim. Proc. General and Elementary, secs. 1188, 1189; *Bow* v. *People,* 160 Ill. 438; *Bulliner* v. *People,* 95 id. 394.) The court might properly have granted the defendant's request in this case even though some testimony had been taken before the request was made, but it was a matter within its discretion. There is no showing that the defendant was in anywise prejudiced by the court's refusal to grant the request, and such refusal cannot be said to be error.

Eddie Cox, a witness for the People, testified that on the morning the deceased was killed the defendant came to his house at 221 North Seventh street at about 8:30 o'clock and called for Margaret Timmons, a girl who stayed there but who was not there at that time; that the defendant came into his house and shaved and ate breakfast there,

and was still there when witness went out, at about 10:30 o'clock. On cross-examination the defendant's attorney asked the witness what Margaret Timmons was at his house for and what was the nature of his place at 221 North Seventh street. Objections to these questions were sustained. The purpose of these questions was to show that witness' house was a house of prostitution. In the brief of the People in this court it is stated that the house at 221 North Seventh street was a house of prostitution. It was proper for the defendant to bring out this fact on cross-examination as a matter affecting the credibility of the witness. (*People* v. *Bond,* 281 Ill. 490.) The court erred in unduly restricting the cross-examination of witness Cox.

Several police officers testified for the People. Officers Smith and Schoenhoff arrested Watson shortly after the deceased was killed. Smith testified he got from Watson a description of the man who was with him but no information as to where the man was. Schoenhoff testified that he received information from Watson as to who "his partners" were but not as to their whereabouts; that later in the morning other officers got information from Watson as to where the "partners" were. Officers Dumphey and Boyne arrested the defendant at Cox's house. Boyne testified that he got information from Watson as to where the defendant might be. There was no objection to any of this evidence. It is apparent that this evidence was incompetent, being hearsay, and amounted to a showing that Watson told the police officers that the defendant was the man who was at the drug store with him at the time the deceased was killed. The attorney for the defendant argues that other rulings of the court on objections to evidence shows that an objection to this evidence would have been overruled if made. We do not find any justification for this argument. On the other hand, we think the record clearly shows that the court realized the evidence was improper and incompetent and strongly intimated to the de-

fendant's attorney that he should object to its introduction. The record shows that the attorney who represented the defendant on the trial was appointed by the court so to do. The failure to object to this incompetent testimony, with other matters that appear in the record, shows clearly that because of inexperience in trying criminal cases, or for other reasons, this attorney was incompetent to protect the rights of the defendant. It is true that ordinarily the admission of improper evidence in a criminal case will not be considered as ground of reversal unless there was objection interposed at the trial to the introduction of such evidence. (*People* v. *Fisher,* 295 Ill. 250.) In this case, where the defendant was represented by an attorney evidently inexperienced in the trial of criminal cases, who had been appointed by the court, it certainly was the duty of the court to have refused, of its own motion, the introduction of the incompetent evidence, which was so highly prejudicial to the defendant. *People* v. *Blevins,* 251 Ill. 381.

The defendant introduced evidence showing that he was in jail from December 20, 1931, to June 3, 1932, for the purpose of showing that the State's witness Hamm could not have seen him on a street in East St. Louis in February, 1932, as such witness had testified. The court, after this evidence was introduced, said to the jury: "The court instructs the jury the testimony just admitted in evidence before you is for the purpose, if at all, for the purpose of impeaching certain testimony on behalf of the People. Whether it is or not is for you to determine, you being judges of the fact." This statement of the court to the jury of the purpose for which such evidence was introduced and could be considered was not an instruction to the jury within the meaning of the statute requiring instructions to be in writing. (*People* v. *Horn,* 309 Ill. 23.) Had the court not used the words "if at all" there could be no possible basis for any objection to the statement of the court. Just why those words were used, or what, if any, effect

they had on the minds of the jury, is problematical. In commenting on evidence at the time it is admitted the court should be very careful to give no intimation of any kind to the jury of his opinion of its weight or effect, and the comments should be made in such manner as to cause the jury clearly to understand the purpose for which it is admitted and that the jurors are the sole judges of its weight.

After the evidence last above mentioned was introduced, the defendant's attorney attempted to show that the defendant was in jail awaiting trial and not serving a sentence. Objection was sustained to such evidence. There was no error in that. The evidence of his being in jail had no place in the case except in so far as it tended to impeach the testimony of the State's witness Hamm, and the reason for his being in jail was wholly immaterial.

The bill of exceptions shows that during the first closing argument for the People objections to a certain portion of the argument were made by the defendant's attorney, and there being a controversy as to the precise language used to which the objection was made, the defendant's attorney requested that the court reporter be called to take down the argument, which request was denied by the court, who stated, "The reporter has gone." In the bill of exceptions is contained a motion, verified by the affidavit of the defendant's attorney, to have the bill of exceptions show that the State's attorney in his closing argument said, "If you do not bring in a death sentence you are guilty of all the other murders that may happen in this country;" that the State's attorney in his closing argument also spoke of the supposition that an innocent person would always deny his guilt, told the jury that the defendant had, while in custody, refused to talk, and concluded by saying, "He has never said a word of denial up to and including to-day," and that objections to these statements in the argument were made and overruled. The motion to have said matters shown in the bill of exceptions was denied.

The showing made by the motion to have the bill of exceptions show that certain improper statements were made in the closing arguments for the People and were objected to, even though such motion is verified, cannot be accepted in this court when the bill of exceptions does not show that such statements were made in argument and that objections were interposed thereto. (*People* v. *Parker,* 284 Ill. 272.) It is the duty of the trial judge to settle the bill of exceptions, and his decision as to what occurred on the trial is final and not subject to review. (*Mayville* v. *French,* 246 Ill. 434.) The bill of exceptions in this case does show that the court refused the request of the defendant's attorney to have the argument of the State's attorney taken down by the court reporter. The denial of this request was error. (*People* v. *King,* 276 Ill. 138.) The defendant had the right to have the argument taken down by the court reporter in order that he might by bill of exceptions show what, if any, improper remarks were made by the State's attorney and objected to by him. The denial of this right, together with the error in unduly limiting the cross-examination of the State's witness Cox, must, in view of the circumstances under which improper and incompetent evidence prejudicial to the defendant was put before the jury, be held to be grounds of reversal in this case. Since the jury in this case had a wide discretion in fixing the punishment and did by its verdict fix the maximum punishment, death by electrocution, it is not a case where this court could affirm the judgment notwithstanding prejudicial error, even if it could say that the proof of guilt was clear. (*People* v. *King, supra.*) This court has many times ruled that in the trial of a murder case, in which the punishment may be by confinement of the defendant in the penitentiary for fourteen years only or for the term of his natural life, or in which the death penalty may be fixed, evidence must in those cases be admissible which would not have been admissible, or if admissible

could have availed nothing at common law. For these reasons evidence must be admitted if it tends to prove a substantial ground to lessen the punishment and to reduce it below the maximum punishment fixed for murder. On the other hand, for similar reasons, this court has refused to sustain the maximum punishment in cases in which prejudicial error against a defendant had been committed although the evidence showed that the highest crime known to the law—the murder of a human being in the peace of the people—had been committed. The case of *Nowacryk* v. *People*, 139 Ill. 336, is a familiar example where reversals for murder have been made for prejudicial error where the death penalty was imposed by the court and jury.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*