**People of the State of Illinois, Appellee, v. Atilano Garcia, Appellant.**

**Gen. No. 66-56.**

Second District.

December 26, 1967.

Joanne S. Shea, of Riverside, for appellant.

William R. Ketcham, State's Attorney of Kane County, of Geneva, and Gene Armentrout and W. Ben Morgan, of Elgin, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The defendant, Atilano Garcia, was charged in a two-count indictment with the offense of Aggravated Battery under section 12-4(a) of the Criminal Code. (Ill Rev Stats 1963, c 38, § 12-4(a).) A bench trial resulted in a finding of guilty and the defendant was subsequently sentenced to the penitentiary for a minimum of six years and a maximum of ten years in accordance with the penalty provisions of the cited section.

On appeal, the defendant raises five alleged errors as grounds for reversal. First, the evidence established self-defense. Second, the State's cross-examination of a defense witness was improper. Third, his defense counsel at the trial was incompetent. Fourth, the closing argument by the State was improper and prejudicial. Fifth, the evidence established, at the most, a violation of section 12-4(b) of the Criminal Code (Ill Rev Stats 1963, c 38, § 12-4(b)).

On November 28, 1964, one Jose Castillo, the complaining witness, his brother Tony and Hector Gomez went to the Latin Club located on the second floor of a building in Elgin, Illinois. Tony and Hector were members of a band that was playing at the club that evening and Jose was a patron. About two and one-half hours after they arrived, the defendant entered the club and ordered some Spanish food to take out. While drinking a beer and waiting for his order, an argument commenced between the defendant and Tony, neither having known the other beforehand. The argument continued while the two went into the washroom at which point Eustacco Montana, one of the owners of the club, interceded and told them that he did not want any trouble in the club. This temporarily subdued both parties and they left the washroom. Tony testified that, while in the washroom, he became aware of the fact that the defendant had a gun on his person. The defendant went to the bar to inquire about his food order and Tony went to a table where his brother and other friends were gathered. At this time he told the group that the defendant had a gun, but he testified that he did not know if his brother, Jose, had heard him. The argument began anew between Tony and the defendant and Montana again stopped them and told the defendant to wait in the stairwell for his food. At this time some of the patrons had risen from their tables with beer bottles in their hands and Montana was holding Tony at the doorway to the staircase.

The defendant started down the stairs and when he had reached about the fifth step, Jose, the complaining witness, slipped by Montana and ran down the stairs toward the defendant. Jose testified that he had nothing in his hands or on his person when he went down the stairs and there is no evidence to the contrary.

From this point there was a conflict of testimony. The defendant testified that he was kicked from behind by

someone but he did not know who it was; that he quickly turned around and fired two shots by "fanning" the gun. Jose testified that, as he ran down the stairs, the defendant pulled out a gun; that Jose kicked at him simultaneous to defendant's firing after which Jose turned and started up the stairs when defendant shot the second time; that the bullet from the second shot entered the inside of his right leg at mid-calf and departed on the outside of the same leg just below the knee; that he was taken to the hospital and released two and one-half days later. The leg was exhibited to the court and counsel.

There was further testimony by Jose to the effect that the defendant approached him just prior to trial, on two occasions, and desired to reimburse him for any damages incurred by the incident. Jose testified that on one of these occasions, he "guessed" it was defendant's attorney who waited outside of his home during one of defendant's visits.

It is first contended that the record in this case established an act of self-defense on the part of the defendant. Section 7–1 of the Criminal Code states as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill Rev Stats 1963, c 38, § 7–1.)

■■ This is an affirmative defense. (Ill Rev Stats 1963, c 38, § 7–14.) Unless the State's evidence raises the issue involving the alleged defense, the defendant must

present some evidence thereon. (Ill Rev Stats 1963, c 38, § 3–2.) In People v. Williams, 56 Ill App2d 159, 205 NE2d 749 (1965), the court after setting forth the necessary elements of self-defense, went on to state at pages 165–166:

> "There is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony."

The uncontradicted facts before the trial bench in this case disclose that Jose had nothing in his hands nor on his person when the offense occurred, while the defendant, by his own testimony, admitted that he did not take the time to find out the type of force with which he was threatened. He testified that, at the moment he fired, he did not know who was behind him, what, if anything, the person approaching him had in his hands and that he did not know at whom he was shooting. This is not the quality or type of evidence that would justify the use of deadly force. The trial court was correct in finding that self-defense was not established.

The next contention is that the State committed prejudicial error while cross-examining the defense witness, Montana. On direct examination, the defense elicited the fact that the witness was a partner in the operation of the Latin Club where the offense took place. On cross-examination, the State inquired as to whether the witness had a license to serve liquor at the establishment. He responded, "That's what we are trying to get." When asked if it was against the law to serve liquor without a license, he replied, "I guess so." He was then asked what the results might be if the city council found out what had happened at the club and he admitted that he would not get a liquor license.

■ Based upon these questions and answers and in reliance upon the case of People v. Hoffman, 399 Ill 57, 77 NE2d 195 (1948), the defendant seeks a reversal. In the Hoffman case, the sister of and witness for the defendant was asked on cross-examination about being indicted for burglary. The trial court overruled an objection and allowed the witness to answer. On appeal, the Supreme Court, in reversing the conviction, stated at page 63:

> "We are in full accord with what we said in the Halkens case, (People v. Halkens, 386 Ill 167) but in that case we fully and succinctly pointed out that even though not a defendant, the witness can be required to testify only to former convictions involving infamous crimes and cannot be interrogated on arrests or indictments, or upon convictions of crimes not infamous, as the credibility of a witness is not presumed to be affected by anything less than the conviction of an infamous crime." (Citation added.)

The State, in contravention, calls this court's attention to People v. White, 251 Ill 67, 73, 95 NE 1036 (1911); People v. Bond, 281 Ill 490, 499, 118 NE 14 (1917); People v. Winchester, 352 Ill 237, 244, 185 NE 580 (1933); and People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955). In the White case, a defense witness who had, on direct examination, testified that he was a bartender, was cross-examined concerning his having worked for a gambling house. In the Bond case, a defense witness was asked by the State if she had kept a house of ill fame, and in the Winchester case, a witness for the People testified that the defendant had stopped at his house to call upon a Margaret Timmons who was not at the house at the time of the call. On cross-examination of the witness, the trial court did not allow the defendant to ascertain whether the witness' house was a house of prostitution. On appeal the Supreme Court held it to be error.

■ A summation of the White, Bond and Winchester cases, along with others, and the reasoning behind each, may be found in People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955) at pages 257 et seq. At page 260, the court stated:

"The general rule in Illinois, as established by the Bond, White and Winchester cases referred to above, is that it is proper to cross-examine a witness to bring out the witness's unlawful and disreputable occupation and activity as a matter affecting credibility."

■ At first glance one might conclude that the rule set forth by the defendant in the Hoffman case is in direct conflict with the rule that evolved in the four cases cited by the State. However, this was later clarified by the Supreme Court in the case of People v. Mason, 28 Ill2d 396, 192 NE2d 835 (1963) where at pages 400–401 the court stated:

"A distinction must be made between proof of conviction of an infamous crime for the purpose of impeaching credibility of a witness and the use of arrest or indictment as evidence of bias or interest on the part of the witness.

"A witness may be impeached by attacking his character by proof of conviction of an infamous crime. (Ill Rev Stats 1961, chap 38, par 734.) For this purpose only conviction may be proved, and proof of arrests, indictments, charges or actual commission of crime are not admissible. (People v. Hoffman, 399 Ill 57; People v. Newman, 261 Ill 11.) The rule prevailing in most jurisdictions and supported by the great weight of authority is that it is not permissible to show that a witness has been arrested, charged with a criminal offense, or confined in prison, or to inquire as to such fact upon cross-

examination, where no conviction is shown, for the purpose of impairing his credibility. Anno 20 ALR2d 1421, 1425.

"However, showing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. (Anno 20 ALR2d 1421, 1440.)"

In the case at bar we are of the opinion that the cross-examination of Montana, concerning his operation of a dramshop without a liquor license, could be inquired into "where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely." He stated that he was trying to get a license, that he did not want any trouble at the club because the city council would find out and, if they did find out, he would not get his license. If a witness is engaged in an unlawful and disreputable occupation, in justice and fairness he should not be permitted to appear before the jury as a person of high character who is engaged in a lawful and respectable occupation. People v. Bond, supra, at page 499. We feel that it was a proper subject of inquiry by the State under the facts in this case.

The defendant next contends that his attorney, whom he selected, was incompetent and thereby prejudiced his case. His reasons are twofold: first, that when the defendant went to visit the complaining witness prior to trial, his attorney accompanied him on one occasion and second, that prior to the taking of testimony at the trial, defense counsel stipulated that the defendant, while in the State of Michigan, was convicted of three felonies, being:

404

■■■■■■■■■■■

assault with a deadly weapon in 1954, felonious assault in 1955 and assault with intent to do great bodily harm less than the crime of murder in 1959. The State made no answer to this contention.

As to the first reason, this is based upon the complaining witness's testimony that he "guessed" the defendant's attorney accompanied him. This is the only evidence on the point. At no time did the defendant testify that the attorney was present. With this conjecture we find no merit.

■■ As to the second reason, we also find no merit. It is not error for defense counsel, in a criminal proceeding, to stipulate as to certain evidence. In People v. Woods, 23 Ill2d 471, 179 NE2d 11 (cert den 370 US 910, 8 L Ed2d 404, 82 S Ct 1257), a 1961 case, the court said at page 474:

> "Trial counsel will not be judged other than competent because of his use of a stipulation of evidence where that method of setting forth evidence may have seemed more desirable. Counsel for a defendant in a criminal action may, if he thinks it to be 'for the best interest of his client, stipulate the facts to which the People's witnesses will testify.' (Citations omitted.) (T)his court stated in People v. Polk, 19 Ill2d 310, 315, that 'The law is well established that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the People have alleged against him. Having done so, he cannot complain of the evidence which he has stipulated into the record.' "

It is possible that defense counsel could stipulate to all of the evidence. See, People v. Hare, 25 Ill2d 321, 324, 185 NE2d 178 (1962); reasserted in People v. Dean, 31 Ill2d 214, 220, 201 NE2d 405 (1964). Where a defendant is represented by counsel of his own choice, the conviction will not be reversed because his counsel did not use the

405

greatest of skill or may have made some tactical blunder. It is the overall representation that must be considered. People v. Nordstrom, 73 Ill App2d 168, 182, 219 NE2d 151 (1966).

██ The fourth alleged error arises from the closing argument of the State based upon the following statements:

> "In reviewing the evidence very briefly, Mr. Garcia came to the dance carrying a gun. We have a man here who, I submit to the Court, is not worthy of belief. This man who has a propensity for felonious assault as evidenced by the stipulation to the effect of three prior convictions in the State of Michigan, four felonies with intent to kill—
>
> "THE JUDGE: Counsel, I think we better strike that. That has nothing to do with guilt or innocence in this case.
>
> "MR. KETCHAM: I bring this to the Court's attention whether this man is worthy of belief.
>
> "THE JUDGE: For that purpose alone, whether the Court gives any weight to his testimony, all right."

Part of the evidence before the court was the defendant's former convictions. It is to be remembered that this was a trial before the bench and that it was the court, not the defendant, that raised the objection. It should be noted that the court limited the admissibility of the prior convictions to the weight to be given to the defendant's testimony. It is proper for the State to refer to previous convictions in its closing argument as a basis affecting the credibility of the defendant's testimony, especially, as in this case, where the court, expressly, so limits the purpose. People v. Nastasio, 30 Ill2d 51, 59, 195 NE2d 144 (1963); People v. Halteman, 10 Ill2d 74, 83, 139 NE2d 286 (1956). We, therefore, find no error on this ground.

Lastly, it is urged that the evidence in this case did not show a battery which caused "great bodily harm, permanent disability or disfigurement." As a consequence, defendant urges that the sentence imposed should not have been that provided for under section 12–4(a), supra, but rather that provided for under section 12–4(b), supra. There is a difference in the penalties. Under section 12–4(a) the maximum sentence is ten years, whereas, under section 12–4(b) the maximum sentence is five years.

As an aside, the State claims that this point is being raised for the first time on appeal. However, it does not pursue this claim, nor shall we. The State, in its brief, admits that there is no evidence of any permanent disability. It further concedes that the evidence as to permanent disfigurement is questionable. Nevertheless, it strongly urges that a gunshot wound, as herein described and observed by both the trial court and the defense, must be termed "great bodily harm."

Before the effective date of sections 12–4(a) and (b) on January 1, 1962, an assault and battery and aggravated assault and battery were found in sections 56 and 56a, respectively, of the Criminal Code. (Ill Rev Stats 1961, c 38, §§ 56 and 56a.) The penalty provided under section 56 was a fine only, whereas, the penalty provided under section 56a was either a fine or imprisonment or both. Similar in background theory to the case at bar, the substance of each was the same, to a point; that is, they both dealt with the unlawful beating of another. However, in aggravated assault and battery, the beating would have to result in "severe personal injury."

In interpreting what, under the Statute, would constitute a "severe personal injury," the Appellate Court in People v. Cavanaugh, 18 Ill App2d 279, 152 NE2d 266 (ordered published in full in 1958 and adopted by the Supreme Court in 1958 in 13 Ill2d 491, 493, 150 NE2d 592) said at page 288:

407

"The term 'severe personal injury,' as used in this statute, may not be susceptible of a precise definition, yet it implies an injury of a much more grievous and serious character than that implied by an ordinary battery. Whether the injury sustained and the facts surrounding the commission of an offense would bring the offense within the meaning of Paragraph 56a or Paragraph 56 presents a question of fact for a jury to determine."

 The same reasoning applies to the case at bar. The jury was waived and it therefore became the duty of the trial court to determine the weight and credibility of the exhibit (leg) and the testimony and, thereafter, make its findings with respect to the defendant's guilt or innocence. People v. Davis, 14 Ill2d 196, 202, 151 NE2d 308 (1958). We are of the opinion that the trial court did so. Where the evidence is merely conflicting, this court will not substitute its judgment for that of the trier of fact. People v. Scott, 34 Ill2d 41, 44, 213 NE2d 521 (1966).

The judgment of the Circuit Court of Kane County is affirmed.

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.