People of the State of Illinois, Plaintiff-Appellee, v. Steve Jackson, Otherwise Called Bashir Uden, Defendant-Appellant.

Gen. No. 51,388.

First District, Second Division.

May 7, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the crime of aggravated battery and was sentenced to a term

■■■■■■

of 5 to 8 years in the penitentiary. On this appeal he maintains that the trial court erred in allowing into evidence matters relating to a past arrest which did not result in a conviction for an infamous crime, and that it was also error to admit, during the hearing in aggravation and mitigation, evidence of past arrests and other encounters with the law which had not resulted in convictions.

Henry Przybytek, the prosecuting witness, testified that he had been working on the far southwest side of Chicago until 3:00 a. m. on the morning of January 17, 1965, and that after work he proceeded to a cocktail lounge in the Rush Street area of the city where he consumed two drinks. About 5:00 a. m. Przybytek left the lounge and proceeded to a snack shop called "Feast-on-a-Bun" located on North Clark Street near Division Street.

The front portion of the restaurant was crowded and as the witness entered he attempted to go to the rear of the establishment. Przybytek testified that defendant was standing in the aisle speaking with another person, and as the witness attempted to pass, he brushed both defendant and the person with whom he had been conversing. The witness stated that defendant remarked to him, "What are you, one of those smart Dagos or something," and used profanity, to which the witness replied, "No cause for that." Defendant then stated, "Man, I'll kill you." Przybytek testified he replied, "That's pretty stupid to talk that way," and turned to walk away when he felt a blow on the side of the neck. Thinking that defendant had attempted to strike him on the chin, but missed, Przybytek turned around and felt another blow to the stomach. Defendant backed away and Przybytek testified he then saw the "glimmer" of a knife in defendant's hand, exclaimed "Oh, God," and turned and ran from the establishment with defendant close behind him shouting, "Run, run, run."

Przybytek crossed the street and entered another restaurant where he received treatment for neck and stomach wounds, both of which were bleeding. The police were summoned and arrived a short while later. Przybytek testified the officers first drove him around the block in an effort to locate defendant, but the witness became weak and was taken to a hospital where he underwent surgery and was hospitalized for a period of ten days. While in the hospital Przybytek identified defendant as his assailant from photographs shown to him by the police.

Defendant testified in his own behalf and stated that he was a free-lance artist working under the pen name of "Bashir Uden" and that on the morning of the occurrence he was in the "Feast-on-a-Bun" sketching a portrait of one of the patrons. Przybytek entered and interrupted defendant in his work, stating to him, "He don't want none of those things. Get away from him." The patron interjected that he requested defendant to sketch his portrait, but Przybytek again stated that the patron did not want a portrait. Defendant testified that Przybytek made a remark and then struck defendant, knocking off his spectacles. Defendant stated that he fell back against the service counter, took hold of a plate and "pushed it on to Przybytek . . . pushed it on him and he ran out the door." Defendant stated that he also fled the establishment, leaving behind his artist's portfolio, a large zipper-pouch containing art papers and supplies. He stated that he telephoned the "Feast-on-a-Bun" the following day to determine the whereabouts of the portfolio and was informed that it was in police custody, and that he was too busy thereafter to secure the portfolio from the police.

Defendant further testified on direct examination that some three weeks later he and his aide, Emanuel Bay, were returning from a painting job when they were de-

tained by the police on North Avenue. Defendant testified he was asked his identity and was arrested. He further testified that his companion, Bay, was also arrested and that a carving knife was taken from Bay's possession which Bay had been using to cut and install rugs.

Police Officer Salvador Aguado testified for the State in rebuttal that he and his partner were cruising in their squad car near "Feast-on-a-Bun" at the time of the incident and were hailed to the aid of Przybytek, whom they drove to the hospital. Officer Aguado returned to "Feast-on-a-Bun" where he found an artist's portfolio with the name "Bashir Uden" inscribed on its cover. The name was checked through police files and it was found to be an alias of defendant. About three weeks later, the officer testified, he was cruising in his squad car and came upon a disturbance at North and Ogden Avenues. He recognized defendant as matching the description of Przybytek's assailant, requested defendant's name, which was given as "Bashir Uden," and arrested defendant. The officer testified he searched defendant and found a large butcher knife on his person.

Mr. Frank Guardi testified that he was employed at "Feast-on-a-Bun" on the morning of the incident and that he neither witnessed the altercation between defendant and Przybytek, nor did he see any blood on the floor after the men had left. He testified that he "saw two fellows run out in a hurry" and that the last one out of the establishment was defendant.

Defendant first maintains that the trial court erred in admitting into evidence matters concerning a past arrest which did not result in a conviction for an infamous crime. On direct examination defendant was asked a question by his counsel to which he responded, "I don't carry a knife." Upon cross-examination by the State, the following took place:

"Q. (Assistant State's Attorney) You say you don't carry a knife?

"A. (Defendant) No, sir.

"Q. Did you ever carry a knife?

"A. No, sir.

"Q. Never carried a knife?

"A. I don't carry a knife.

"Q. Ever get arrested for carrying a concealed weapon in St. Louis?

"A. That arrest, they stopped me on the street with a bunch of fellows with me and asked me about that knife that was on the ground and everybody denied it and the police said to come and get in the car and they took me down.

"(Defense Attorney) Object.

"A. (Defendant) I wasn't through yet.

"(Defense Attorney) I will ask that this question and answer be stricken because an arrest is not a competent method of establishing anything.

"(Assistant State's Attorney) I didn't say—

"A. (Defendant) I wasn't through.

"(Assistant State's Attorney) I am not going on the arrest. He wasn't picked up for carrying a concealed weapon?

"A. (Defendant) I stayed there until about four or five hours and they turned me loose, but it wasn't my knife. I don't even carry a knife."

██ ██ Evidence of noninfamous crimes, and evidence of arrests or other encounters with the law which do not

result in convictions for infamous crimes are inadmissible for impeachment purposes. People v. Herbert, 361 Ill 64, 196 NE 821; People v. Smith, 74 Ill App2d 458, 221 NE 2d 68. However, the admission of inadmissible evidence which would otherwise be considered prejudicial in a jury trial, will not be considered prejudicial in a bench trial unless it affirmatively appears of record that the trial judge placed reliance thereon in arriving at his judgment. See People v. Robinson, 30 Ill2d 437, 197 NE2d 45; People v. Smith, 55 Ill App2d 480, 488, 204 NE2d 577.

■■ While the State had a right to produce evidence to dispute defendant's testimony that he did not carry a knife, the manner in which the State attempted to do so was not proper. Nevertheless, the record in this case does not reveal that the court in any way relied upon the evidence with respect to the St. Louis concealed weapon arrest. Defense counsel strenuously objected to the State's line of questioning in this regard, as appears above, and yet the trial court made no ruling on the objection and defense counsel did not press for a ruling thereon. Furthermore, in the trial court's extensive summary of the evidence, made prior to the finding of guilty, no mention is made of the St. Louis arrest. Under the circumstances, we are of the opinion that the admission of the St. Louis arrest into evidence was not prejudicial to the defendant.

During the hearing in aggravation and mitigation the State was permitted, over objection, to read from defendant's criminal record, which set out not only convictions for various crimes, but also listed arrests and other encounters with the law of which defendant was not subsequently convicted, including the St. Louis arrest and charges of battery, resisting arrest and being a fugitive from justice. Defendant contends that it was error for the trial court to have heard and considered this evidence and that defendant was consequently prejudiced in the determination of the extent of his punishment. We agree.

199

■ Arrests or other encounters with the law which have not resulted in convictions are inadmissible at the hearing in aggravation and mitigation in arriving at the punishment for the crime charged. People v. Riley, 376 Ill 364, 367, 33 NE2d 872; People v. Grigsby, 75 Ill App2d 184, 191–193, 220 NE2d 498. While it was held in the Riley case that the admission into evidence of defendant's prior arrests at the hearing in aggravation and mitigation was not prejudicial to defendant, the Court nonetheless commented that such evidence was otherwise inadmissible and stated at page 372 of the opinion that it did not "approve of the procedure in this case and careful prosecutors will avoid using it."

■■ In the case of People v. O'Riordan, 21 Ill App2d 309, 157 NE2d 780, published in abstract only, the Court was confronted with a question similar to that presented here. O'Riordan was being tried for the crime of assault with intent to commit a lewd and lascivious act and, after having found him guilty as charged, the trial court read from a paper handed to him by the State detailing several arrests and investigations of defendant by the police on "sex matters" which did not result in convictions or, in some instances, the filing of charges. Holding this to have been error, the Court stated at pages 8 and 9 of the unpublished opinion:

> "In the instant case evidence that the defendant had been questioned by the police concerning various sex crimes was neither competent nor material. Such questioning, standing alone, without a full presentation of all of the facts and circumstances connected with the prisoner's detention is outside the purview of the inquiry under the provisions of the statute. Those matters should not have been presented to the court, nor, if they were presented to him, should not have been considered."

While it is true as the State contends, that the court in the hearing in aggravation and mitigation is not bound by the ordinary rules of evidence applicable to criminal proceedings and may search anywhere within reasonable bounds for facts tending to show aggravation or mitigation of the offense for which a defendant is on trial, People v. Popescue, 345 Ill 142, 177 NE 739, the evidence must be competent and material. See e. g., People v. Crable, 80 Ill App2d 243, 250, 225 NE2d 76; People v. McWilliams, 348 Ill 333, 338, 180 NE 832; People v. O'Riordan, 21 Ill App2d 309, 157 NE2d 780; People v. Popescue, 345 Ill 142, 177 NE 739, supra; People v. Mitchell, 57 Ill App2d 238, 205 NE2d 655.

██ In the instant case it is readily apparent that in sentencing the defendant the trial court gave consideration to and placed weight upon his prior arrests and other encounters with the law which did not result in convictions, as evidenced by the court's comment just prior to sentencing: "I am going on his entire record. And he is one apparently from his record who is quick to engage in violence." This Court has the power to reduce sentences in appropriate cases. Supreme Court Rule 615; Ill Rev Stats 1967, c 110A, par 615 (b) (4). Inasmuch as this inadmissible evidence affected the extent of the sentence imposed upon defendant, of a term of not less than five years nor more than eight years in the penitentiary, the sentence is reduced to a term of not less than three years nor more than eight years in the penitentiary.

For these reasons the judgment is modified and as modified is affirmed.

Judgment affirmed as modified.

McNAMARA and LYONS, JJ., concur.