THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE GIBSON, Defendant-Appellant.

(No. 70-23;

Third District—July 26, 1971.

Jack A. Brennenmeyer, of Peoria, for appellant.

Jay H. Janssen, Assistant State's Attorney, of Pekin, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the conviction of the defendant, Joe Gibson, by the circuit court of Tazewell County on the charge of murder. The defendant was sentenced to a term of imprisonment of not less than 25 years nor more than 40 years.

A number of errors have been assigned by the defendant as grounds for reversal, but we shall direct our attention to only those which we deem material which are as follows: (1) that the court erred in permitting the prosecution to impeach defense witnesses by eliciting inadmissible evidence, and (2) that the Court erred in instructing the jury.

██ The law is well settled in Illinois to the effect that evidence of non-infamous crimes and evidence of arrest of other encounters with the law which do not result in convictions for infamous crimes are inadmissible for impeachment purposes. (*People v. Jackson*, 95 Ill.App.2d 193, 238 N.E.2d 196.) However, a series of cases have resulted in establishing an exception to this general rule so that it is now proper to cross examine a witness to bring out the witness's unlawful and disreputable occupation and activity as a matter affecting credibility. (See *People v. White*, 251 Ill. 67, 95 N.E. 1036; *People v. Bond*, 281 Ill. 490, 118 N.E. 14; *People v. Winchester*, 352 Ill. 237, 185 N.E. 580; *People v. Garcia*, 90 Ill.App.2d 396, 232 N.E.2d 810.) In the *White* case a defense witness who had on direct examination testified that he was a bartender was cross examined and it was disclosed that the witness ran a gambling house. The Supreme Court stated:

> "Surely the prosecution was not required to permit this witness to appear before the jury as a man of high character and worthy of confidence when he was disreputable and his chief occupation that of a lawbreaker."

In the *Bond* case a defense witness was asked by the State if she had kept a house of ill fame. The Supreme Court held such an inquiry as to occupation to be permissible, stating:

"If a witness is engaged in an unlawful and disreputable occupation, in justice and fairness he should not be permitted to appear before the jury as a person of high character who is engaged in a lawful and respectable occupation."

In the *Winchester* case it was held to be error to deny the defendant the right to ascertain if a witness for the People was associated with a house of prostitution. In the *Garcia* case it was held to be proper for the State to inquire of the operator of a club where a shooting occurred as to his operation of a dram shop without a liquor license, since such testimony of the operator, who was a defense witness, might tend to be influenced by interest, bias or other motive to falsely testify where he stated he was trying to get a license and that he did not want any trouble at the club.

There is no question but what a review of the cases cited establishes a rule in Illinois to the effect that it is proper on cross examination of a witness to bring out the witness's unlawful and disreputable occupation and activity as a matter affecting credibility. In the case before us for review the State contends that the law set forth in the *White, Bond, Winchester* and *Garcia* cases constitute ample authority for the type of cross examination of defense witnesses that was conducted for impeachment purposes. Directing our attention to the cross examination conducted by the prosecutor of defense witness Joan Marie Hebner, the record discloses that the witness testified that she was separated from her husband, he provided her with no income, that she was unemployed, that she had a four year old child and was receiving State funds known as aid to dependent children. After this information had been obtained from the witness the following colloquy took place between the prosecutor, witness Hebner and the court:

"Prosecutor: Let me ask the question first. Is it a customary thing for you to spend the afternoon drinking while your four year old child is with your parents?

A. No, it's not customary, but I do it once in a while.

Defense Counsel: I'm objecting to any further questioning along this line, your Honor.

Prosecutor: We have a right to impeach their witness, your Honor.

Court: He has a right to object too."

It was noted that the court did not rule upon the objection of defense counsel, thereby permitting the jury to conclude that such questioning was proper for the purpose of impeachment. Later the prosecutor attempted to impeach the same witness in the following manner:

"Redirect Examination.

It is true that my parents help quite a bit for the support of my child.

Recross-Examination.

Q. Do they provide this money for the support of your child or the support of your drinking habits.

Defense Counsel: I'll object—

Witness: For the support of my child.

Defense Counsel: I ask that be stricken. He's trying to be cute with this young lady.

Court: What was the question.

Prosecutor: It does [sic] to the credibility of this witness and the jury has the right to judge this witness on her character.

Court: All right, read the question.

Reporter: Do they provide this money to you for the support of your child or the support of your drinking habits.

Court: Overruled. It's been answered. Do you have any further questions.

Prosecutor: Nothing further.

Defense Counsel: That's all."

The prosecutor in cross examining defense witness Carol Jean Harris asked if it were not true that the witnesses who testified for the defense were tough. Over the objections of defense counsel, the objection being overruled, the prosecutor was permitted to pursue a line of questioning showing that defense witnesses had been in tavern fights before and the prosecutor asserted to the court when defense counsel again objected that the prosecution had a right to test the credibility of the witnesses in that manner since it went to the proof of character. The court agreed with the prosecutor and the questioning regarding tavern fights continued.

After an analyzation of the cross examination of defense witnesses we can only conclude that the prosecutor was overzealous in his effort to impeach their testimony. The cross examination did not disclose that any of the witnesses were engaged in an unlawful and disreputable occupation, nor did the prosecution elicit information from the witnesses that would show bias or a motive on their part to testify falsely. Failing to evoke impeaching testimony as to occupation, bias, interest or motives the prosecutor attempted by innuendo to show lack of good character and bad conduct on the part of the defense witnesses.

We are not unmindful of the case of *People v. Halpin,* 276 Ill. 363, 114 N.E. 932, where our Supreme Court said:

"Cross examination of a witness as to his occupation, associations and conduct, and also as to other questions immaterial to the issues, to determine his credibility, is largely in the discretion of

the court, and does not constitute error unless the discretion is abused."

■■ Upon examination of the *Halpin* case we find the existence of a far different situation than that which is present in the case before us. In *Halpin* numerous questions were asked and answered by the witness in regard to the class of trade he had in saloons, which he had operated, allowing women in them, running rooms for assignation purposes in connection with his saloon, and collecting money from women running houses of prostitution and paying it to the police. *Halpin* presents a case of unlawful and disreputable occupation and activity. In the case before us we can only conclude that the methods of impeachment used by the prosecution were clearly improper. We can only conclude that the cross examination conducted by the prosecutor of defense witnesses in an effort to impeach their testimony was highly prejudicial and constituted reversible error.

At the request of the prosecution the court gave the following instruction:

"Evidence of a defendant's previous conviction of a crime is to be considered by you only insofar as it may affect his credibility as a witness, and must not be considered by you as evidence of his guilt of the crime with which he is charged."

■■ This instruction accurately sets forth the law in Illinois and is contained in the Illinois Pattern Jury Instructions for Criminal Cases, however, such an instruction is to be given only at the request of the defendant and not by the People, as was the situation in the case before us. (See Commentary in Illinois Pattern Jury Instructions—Criminal, Instruction 3—13, page 28.) It should be the prerogative of the defendant to determine whether such an instruction is beneficial to his defense or whether it would only serve to accentuate his past criminal record. To use or to not use such an instruction is a matter which is to be determined by the defendant or the trial court on its own motion, and not by the People. The giving of such an instruction by the People was prejudicial to the defendant and constitutes error.

For the errors indicated the judgment of the circuit court of Tazewell County is reversed and the cause remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.