THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY P. HANKS, Defendant-Appellant.

(No. 12190;

Fourth District—February 21, 1974.

Robert I. Auler, of Champaign (Marc J. Ansel, Senior Law Student, of counsel), for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, and Jerry Finney, Senior Law Student, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

After a jury trial in the circuit court of Champaign County, Gary P. Hanks was convicted of burglary and sentenced to imprisonment in the penitentiary for one year, six months to three years. On this appeal, he seeks reversal of the conviction on the grounds of the trial court's evidentiary rulings and denial of his motion to suppress identification testimony.

The State's principal witness was Thomas Wayne Green, age 17, a janitor for the Pizza Hut, located at Neil and Kirby Streets, Champaign, Illinois. He arrived at work on March 20, 1972, around 5:00 A.M. Upon entering the building, he noticed a yellow Volkswagen parked near the main entrance. Shortly thereafter, he heard a commotion in the basement, then a car start, and he looked out through the glass door observing the person in the Volkswagen as the car started and drove off toward Kirby Street. Although it was fairly dark, he noticed that the subject had curly black hair of medium length, that he wore a yellow shirt and was a young white male of medium build, weighing about 150 to 160 pounds. He saw the car speed off with lights off and immediately called the police, who were sent to the area in pursuit of the subject vehicle, described by Green as a late model yellow Volkswagen.

Shortly thereafter, officer Danny Strand apprehended defendant in a yellow Volkswagen, ordered him to exit, and defendant attempted to escape by fleeing and refused to stop until the officer drew his gun. After turning defendant over to other officers at the scene of the arrest, he observed a dark brown curly hair wig in the front seat, a set of leather gloves, assorted boxes of tools, suitcases, crowbar, tool pouches and other paraphernalia, including a hydraulic jack laying in the back part of the

car. The crowbar that had paint scrapings on the end was lying on the top of the boxes in plain view. It was later established through expert testimony that the particles on the crowbar matched the paint taken from the back door of the Pizza Hut that had been pried open to gain entry.

While the witness Green was in a room in the police station making a statement concerning the burglary, he saw a person walk through who looked quite a bit like the alleged burglar except that his hair was too long and that it was not curly. The defendant had been first instructed by the police to walk through the room where Green was sitting without the wig on and later wearing the wig that was found in the car. This time, when the defendant was wearing the wig, Green informed the officer taking his statement that the person who then walked by him was very similar to the man he saw leaving the scene of the crime.

Prior to trial, defendant filed a motion to suppress any testimony concerning lineups that defendant participated in and further suppress any in-court identification of defendant by State's witnesses. After hearing, the court denied both motions. Defendant further claims error of the trial court based upon evidentiary rulings of the trial court limiting defense counsel's cross-examination of witnesses Green and Jerry Lewis, the assistant manager of the Pizza Hut. During the cross-examination of Green, defense counsel attempted to elicit from the witness why he had subsequently been fired from his job at the Pizza Hut approximately a month after the incident in question. The State's objection to the relevancy and the scope of the cross-examination was sustained. Consequently defense counsel made an offer of proof outside of the presence of the jury concerning the issue. The defense counsel was attempting to show that witness Green had a motive for perjuring himself. Later on defense counsel made a similar offer of proof during the cross-examination of the witness Lewis. Apparently Lewis was the individual who had witnessed Green's alleged thefts. This offer of proof was also denied. Essentially, defense counsel was trying to establish through his offer of proof that there had been a shortage of money in the Pizza Hut prior to the burglary and that the management of the Pizza Hut had set up a trap and caught Green on one specific date and that he had admitted the thefts.

In the defendant's case in chief, an alibi defense was resorted to. Certain witnesses testified that the defendant had left Chicago in the yellow Volkswagen belonging to his fiancée at approximately 1:30 A.M. on March 20; that the car had significant damage in its rear portion; and that it had no racing stripes on the side and had a decal on the back window. William Ranier testified that the defendant arrived at his house

sometime between 4:30 and 5:00 A.M., and that defendant stayed approximately 20 to 30 minutes at his home.

Defendant attaches considerable significance to the discrepancies that existed in Green's description of defendant's car. Green had previously testified that the Volkswagen he observed was a fairly new model and at the bottom had some sort of black markings, which he characterized as something like racing stripes although he stated it could have been the running board, and he noticed that the rear window had a defroster. When defendant was apprehended, he was driving a late model yellow Volkswagen with a black running board; however, it did not have any racing stripes.

The defendant contends that the offers of proof of the main witness' thefts from his employer would show a motive to falsify in that the witness himself may have committed the crime and had a definite interest in seeing the defendant convicted. He argues further that the testimony of the assistant manager Lewis should have been admitted since it tended to support the earlier offer presenting facts establishing the biasness of Green.

■■ Generally, a reviewing court will not interfere with a trial court's ruling concerning the latitude allowable on cross-examination of the witness unless that ruling was clearly abusive and resulted in a manifest prejudice to the defendant. (*People v. Halteman* (1956), 10 Ill.2d 74, 139 N.E.2d 286.) However, the widest latitude should be given the defendant in cross-examining for the purpose of establishing bias of a witness (*People v. Naujokas* (1962), 25 Ill.2d 32, 182 N.E.2d 700), and the inquiry may extend to matters outside the scope of direct examination. (*People v. Steel* (1972), 52 Ill.2d 442, 288 N.E.2d 355.) This general rule has been explained in criminal cases involving a witness called by the State to prove its case and who has been *arrested* or *charged* with the crime for which the defendant stands charged or for separate offenses of such nature that the witness' testimony might be influenced thereby on account of his interest, bias or motive to testify falsely. *People v. Norwood* (1973), 54 Ill.2d 253, 296 N.E.2d 852; see *People v. Garcia* (1967), 90 Ill.App.2d 396, 232 N.E.2d 810.

■■ Although it is not permissible to show that a witness has been arrested, charged with an offense, or confined in prison, or to even inquire into such facts upon cross-examination when no conviction is shown for the mere purpose of impairing his credibility, a defendant can show bias or interest of a witness in order to impeach him. In *People v. Mason* (1963), 28 Ill.2d 396, 192 N.E.2d 835, the court stated:

> "* * * [E]ven in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility gen-

erally, the fact that a witness has been *arrested* or *charged* with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. Anno. 20 A.L.R.2d 1421, 1440." (Emphasis supplied.) 28 Ill.2d 396, 400-401.

In *People v. George* (1971), 49 Ill.2d 372, 274 N.E.2d 26, the supreme court again reaffirmed the rule of *Mason* and *Halteman*. The scope of the court's ruling in *George* was that it was proper for a defense counsel in cross-examination to bring forth the fact that the witness was *charged* with an offense in order to show a "possibly influencing interest" (49 Ill.2d 372, 380). In the *George* case, a defendant attempted to elicit on cross-examination from a witness that said witness had simply been *under investigation* for the burglaries that the defendant stood charged with. The trial court refused to permit defense counsel to pursue such a line of questioning. The supreme court held that the trial court did not clearly abuse its discretion in so ruling (49 Ill.2d 372, 381). The court in so holding resorted to the rule of *Halteman* wherein it is specifically stated:

"As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere." 10 Ill.2d 74, 86.

The defendant in this case seeks to extend the parameters of cross-examination of a witness in order to show bias much beyond present permissible limitations. He would extend defendant's cross-examination rights to matters dealing with alleged or purported previous dishonest acts or misconduct beyond matters dealing with actual arrest or charge, beyond investigation and even further beyond matters that have not come to the attention of law enforcement officials by complaint, report or otherwise—matters that would if so extended tend to permit embarrassment and harassment and enhance the reluctance of State witnesses to appear and testify in court in criminal matters.

Defendant attempts to raise the witness Green's admission to his employer of dishonest acts, *i.e.*, taking money out of the cash register to play the juke box, up to a level equivalent to that of pending or dismissed criminal charges against a witness where promise of leniency or dismissal are in the hands of the prosecutor to be held until the witness has testified for the State, where in such case, it would be reversible error for a trial court to deny cross-examination into the matter. (*People v. Barr* (1972), 51 Ill.2d 50, 280 N.E.2d 708.) The crux of the holdings

of these cases is that evidence which tends to establish or show the state of feelings of a witness toward either party is not collateral and may be received when it is direct and positive and not remote or uncertain (4 Jones on Evidence, sec. 917).

■■ The witness' alleged past dishonesty had no inherent relation to his role as a witness against the defendant nor to any involvement, past or present, with the prosecutor's office. It was entirely too remote to show any bias or motive to testify falsely. The main objective of cross-examination in similar situations should be to impair the credibility of the witness on the grounds that he had something to gain by testifying against the defendant. None is shown in the record, and to permit defense counsel to probe to this depth into the witness' background would becloud the main issues and obscure the question of guilt or innocence of the accused from the purview of the jury. Although on cross-examination the range of evidence for the purpose of discrediting is very liberal, an undue latitude in the cross-examination of witnesses in criminal cases as to their character, reputation and past activities when not relevant or material, injects issues other than the guilt of the defendant and tends to shift unjustly that guilt to persons other than the defendant. Witnesses in criminal proceedings are reluctant to testify and many times for good reason. They are subjected to a gamut of appearances and proceedings including countless interviews by police, State's Attorneys and defense counsel, together with appearances at lineups, preliminary hearings, before grand juries, then at trials and sometimes re-trials. Recognition should be given to *their* rights, their fears, their time and inconvenience, their public harassment or ridicule; and to this end the courts should guard and protect them when possible, especially when by so doing the aim is to assure both society and the defendant a fair trial. The courts must ever be alert to the injection of extraneous and prejudicial issues into the trial under the guise of due process or fair trial and never condone this as sound or accepted defense tactics. The statement of Justice Schaefer of the Illinois Supreme Court may be appropriate under the circumstances: "There has been an increasing tendency in criminal cases to try some person other than the defendant, and some issue other than his guilt." (*People ex rel. Sears v. Romiti* (1971), 50 Ill.2d 51, 55, 277 N.E.2d 705, *cert. denied,* 406 U.S. 921.) We might add that this results in something other than a search for truth.

Defendant also argues that the limitations put on the cross-examination of these two witnesses deprived the defendant of due process of law thus rendering the trial fundamentally unfair notwithstanding the correctness of the trial court's ruling under Illinois law and violative of the mandate of *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L.Ed.2d 297,

93 S.Ct. 1038. The defense contends that the Illinois rule limiting the scope of cross-examination on such matters was thus unconstitutionally applied against the defendant.

In *Chambers,* a third party had confessed to several people of the same murder of which defendant was convicted. Evidence on these confessions was excluded under Mississippi's technical application of its rules of evidence refusing to treat declarations against penal interest as an exception to the hearsay rule and its application of the "Voucher Rule" that a party cannot impeach his own witness. The court characterized the evidence thus excluded as "critical" and "tending to prove defendant's innocence" denying Chambers a fair trial.

In *People v. Craven* (1973), 54 Ill.2d 419, 299 N.E.2d 1, our supreme court discussed the holding of *Chambers* to some extent. That portion of *Craven* which discussed the *Chambers* case dealt with the admissibility of offered testimony of a woman who allegedly heard a third person confess to the crime of which defendant stood charged. The supreme court ruled that said testimony of the woman lacked sufficient threshhold reliability to fall within the declaration against penal interest hearsay exception and was properly held from the jury. In the court's discussion of the defendant's contention that the *Chambers* mandate required that the declaration against penal interest be admitted, the court observed that the supreme court had rejected a technical application of rules of evidence by which Chambers was denied the opportunity to discredit through cross-examination the repudiation of a prior written confession because Chambers had called the witness as his own; that the supreme court reversed primarily because of their reliance upon the objective indicia of trustworthiness regarding the proffered hearsay testimony in the *Chambers* case. Chief Justice Underwood stated that in the *Craven* case the measure of reliability suggested by Chambers was not present; for the statement that Craven wanted to submit into evidence was only heard by a woman that Craven then lived with and was unsupported by any independent evidence.

■■ The testimony of Green and Lewis offered and excluded was neither critical nor in any way did it tend to prove defendant's innocence. The relevancy and reliability of the proffered evidence are vital factors and must be considered before finding that the evidence was improvidently excluded under the *Chambers* rule. Therefore when this rationale and the precept that the integrity of the truthfinding function of the trial must be protected are applied to the case at bar, it appears that the trial court's rulings were proper.

The defendant next contends that the court erred in denying his motion to suppress the identification testimony of Thomas Green in viola-

tion of defendant's right to due process of law. He asserts that defendant was subjected to an overly suggestive and tainted one-man show-up, and that as a consequence a fortiori the identification made by Green of defendant in the station and at trial was unreliable and should be suppressed. More specifically, he alleges that the trial court erred in: (1) not suppressing the pre-trial identification of defendant as unnecessarily suggestive; and (2) that the trial court erred in permitting the in-court identification since it lacked independent origin and was a product of an unduly suggestive pre-trial confrontation, citing among other authorities *Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967.

The appellee first of all asserts that the argument had been waived by the defendant due to his failure to include it as a ground for new trial in his motion for new trial filed with the clerk of the circuit court of Champaign County; however, due to the constitutional issue raised in the appeal, we will consider the matter by virtue of Supreme Court Rule 615 (Ill. Rev. Stat., ch. 110A, par. 615).

The circumstances surrounding the identification reflect that within an hour after reporting the offense Green, while sitting in the Champaign police department filling out a statement concerning the burglary of the Pizza Hut, saw the defendant. He observed defendant walking through the station and commented to the officer to whom he was giving the statement that the defendant looked similar to the man who had driven away in the yellow Volkswagen. It should be noted that Green was not informed by any police official that the man that had just walked through the station had just been apprehended for the burglary of the Pizza Hut. Furthermore, when Green observed the defendant walk through the police station for a second time but wearing the dark brown curly wig which was found in defendant's Volkswagen, Green remarked that that man looked very much like the individual he had observed driving away from the Pizza Hut earlier that morning. At that time, it was Green's belief that he had observed two different individuals walking through the station.

■■ The rule of law concerning whether an identification procedure was tainted was restated in *People v. Burbank* (1972), 53 Ill.2d 261, 291 N.E.2d 161. The rule as stated therein is:

"Whether the defendant was denied due process of law depends upon the totality of the circumstances surrounding the identification procedure." 53 Ill.2d 261, 273.

(See also *People v. Pierce* (1972), 53 Ill.2d 130, 290 N.E.2d 256.) In *Stovall*, the United States Supreme Court also pointed out in determining whether a show-up confrontation of the witness and defendant is

unnecessarily suggestive and conducive to irreparable mistaken identification so as to deny due process depends on the total circumstances surrounding each identification.

In *Neil v. Biggers* (1972), 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375, the Supreme Court further discussed and elaborated upon the totality of the circumstances test as applied to identification procedures. The court stated that:

> "It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification'. [Citation.]" 409 U.S. 188, 34 L.Ed.2d 401, 410.

The court went on to lay down several guidelines that must be considered in evaluating the likelihood of misidentification. The court stated:

> "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. 188, ——, 34 L.Ed.2d 401, 411.

Thus in applying the totality of the circumstances test as above explicated upon by the Supreme Court, it appears that while the identification procedures resorted to by the Champaign city police department cannot be considered ideal, they cannot be considered utterly tainted. Green stated that he observed the defendant while driving away in the yellow Volkswagen. He described him in some detail—that is, Green stated that he was white, wore a yellow shirt; and had dark brown curly hair, of medium build and weighed 150 to 160 pounds. A dark brown curly wig and yellow shirt were found in the possession of defendant immediately after he was apprehended. Also, Green's degree of attention was at least adequate in that he had been alerted to the possible fact that criminal activity was afoot when he made his observations. It is true that the level of certainty demonstrated by Green at the confrontation was not absolute; but this fact was proper subject matter for cross-examination, thus bringing it to the attention of the jury.

■■ The length of time between the crime and the confrontation was negligible in that defendant was apprehended within the hour after witness Green had reported the burglary. In reviewing the entire record and all of the circumstances, there appear many other factors which would tend to militate against defendant's contention that the show-up was so suggestive or slanted as to deny defendant due process of law. For example, the extensive circumstantial evidence which clearly corroborated the statements given the authorities by witness Green tend

642

to belie defendant's contention of him being a victim of circumstances. Accordingly, we will not disturb the implicit finding of the trial court that the identification testimony was based upon the witness' observations independent of and uninfluenced by any identification procedures utilized by the police.

For the reasons stated herein, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

CRAVENS, P. J., and SIMKINS, J., concur.