People of the State of Illinois, Plaintiff-Appellee, v. Eddie Lee Welton, Defendant-Appellant.

Gen. No. 52,138.

First District, Fourth Division.

May 29, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Alan Gersh, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Eddie Lee Welton, was indicted for the crimes of forcible rape and armed robbery. A jury found him guilty as charged and the court sentenced him to the penitentiary for not less than eight nor more than twenty years on each count concurrently.

The complaining witness, Lucy B. Franklin, testified that on September 13, 1966, she lived with her daughter in apartment 1603 at 1119 North Cleveland Avenue, in Chicago. She stated that on that date, at about 12:05 a. m., she had returned home from work and was knocking on the door of apartment 101, where her little girl was staying with a babysitter; that she saw the defendant standing near the elevators, and he then came around the corner, grabbed her arm and said, "Okay, let's go." When she screamed he said, "Make another sound and I'll kill you." She continued her testimony as follows: The man put a gun to her head and asked how much money she had; she told him she had five or six dollars, and he made her take the money from her wallet and give it to him.

He then pushed her onto the elevator which went up to the 19th floor. He walked her from the elevator at that floor to the stairway door, then up to the landing between the roof and the 19th floor. He told her to remove her clothes, and when she started to do so he pulled her dress up, pulled off her underclothing, and had intercourse with her two times, during which time he still held the gun. He suggested that they go to her apartment but she told him she lived with a boyfriend and his sister (this statement was not true), so they could not go there, and told him she should go home because they would be worrying about her. She said she would meet him on Wednesday and go wherever he wanted to. As they were walking out to the 19th floor the defendant gave her a cigarette and told her to turn around and look at him, at which time she saw a scar on the left side of his face. (She indicated about two inches or so on the left cheekbone and neck area.) They took the elevator down to the first floor, after which he put the gun in his trousers and walked away, saying that he would see her on Wednesday.

The complaining witness stated that when she got to the babysitter's apartment she telephoned the police and reported what had occurred; that the police took her to Henrotin Hospital where she was refused attention, then took her to Wesley Memorial Hospital where she was examined. At approximately 2:30 a. m., Police Detectives McQuinn and Greiner were taking the witness home from the hospital when she saw the defendant in the building adjacent to her apartment building; she recognized the clothing as the same he was wearing earlier, and she told the police he was the man who had attacked her. The detectives immediately arrested him and found a loaded gun on his person at the inside of the pants belt.

Officer McQuinn testified that the complainant had described the defendant to him as wearing a white shirt, dark pants; that he was slender and had a scar on his neck. When they reached the police station the officer

169

noticed that the defendant did have a scar or mark on the left side of his face. (He indicated to the jury where the scar was.) Officer McQuinn testified that he spoke to the babysitter who said she had not heard any screams.

In this court the defendant contends that the State failed to prove him guilty beyond a reasonable doubt, and that the testimony of the complaining witness was not clear and convincing, nor was it corroborated; and that the witness was less than positive in her identification of the defendant. The defendant did not take the stand, and it is argued here that a statement made by the prosecutor that the complainant's testimony was uncontradicted, violates the rights of the defendant. The complainant testified that her boyfriend, John Collins, was present when the police first arrived; that she had called him and he was with her during the entire time she was with the officers. Detective McQuinn and his partner, Detective Greiner, stated that on the way back from the hospital the only persons in the squad car were the two detectives and the complaining witness.

Considerable space in the appellant's brief in this court is devoted to an attack on the identification of the defendant by the complaining witness, and it might be further said that the attack is not only on the identification in this case but upon all identifications made by eyewitnesses. The complaining witness positively identified the defendant and informed the police officers that he had on his person a gun which was found when they arrested him. The witness also told the police that the defendant had a scar on the left side of his face, which was true. There was ample time and opportunity for observation by the complaining witness.

In People v. Lamphear, 6 Ill2d 346, 128 NE2d 892, and in People v. Martin, 62 Ill App2d 203, 210 NE2d 798 the court held that positive identification by one witness who has ample opportunity for observation is sufficient to support a conviction.

170

The defendant also makes a point of the fact that Officer McQuinn testified that the complaining witness told him the defendant had a scar on his neck, and that the officer testified he saw a scar on defendant's face. However, in the opening argument the State's Attorney made the following statement to the jury with reference to the complaining witness' description of the defendant: "What was on his left cheek and neck? And what is on his left cheek and neck today? A scar, approximately two inches long. And you can examine it on the face of the defendant himself." The jury had the defendant before them and could determine whether the statement of the complaining witness with reference to the scar was reasonably accurate.

The defendant also argues that the testimony of the complaining witness should be disbelieved because if she had actually been raped she would not have carried on the conversation which she had with the defendant. However, we must remember that whatever conversation occurred was during the time the defendant was holding a gun, and that he did not remove the gun until he walked away from the witness, whereupon she made immediate complaint.

██ In discussing the evidence the State's Attorney stated that what the jury heard from the complaining witness and from the police officers "in sum and substance, is uncontradicted." The defendant makes much of that statement and argues that it was made to call attention to the fact he had failed to testify, and the State refers to the fact that our Supreme Court in People v. Norman, 28 Ill2d 77, 190 NE2d 819, held that a prosecutor may comment that the State's case is uncontradicted. The defendant argues that that decision should be reassessed in the light of the U. S. Supreme Court decisions in Griffin v. California, 380 US 609, and in Chapman v. California, 386 US 18. These cases involved instructions by the court to the jury in which the attention of

171

the jury was directed to the fact that the defendant did not testify, as authorized by the California constitution. Neither of these cases, therefore, is controlling of our decision here, whereas we are bound by the Norman case which defendant concedes is directly in point. There the court said at page 81:

> "Although the prosecutor emphasized the uncontradicted character of the People's case, there was no evidence whatever presented by the defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of this statute."

In People v. Martin, 62 Ill App2d 203, 210 NE2d 798, the State in its argument said at page 214: "Has anybody taken the stand in his [defendant's] behalf and said that Fred Baum is lying—" Defendant's counsel then objected, saying that "the defendant doesn't have to prove anything in this case." The State then said that the jury would be properly instructed, and that the defendant didn't have to take the stand. The court said:

> "The Illinois criminal statutes provide that the neglect of the defendant to testify shall not create any presumption against him and that the court shall not permit any reference or comment to be made on such neglect (Ill Rev Stats 1963, c 38, § 734). However, where the defendant presents no evidence, it is well established that this section does not bar comment by the State that its evidence was uncontradicted. See People v. Norman, 28 Ill2d 77, 190 NE2d 819 and cases there cited."

The cases cited by the defendant in his brief are not in point because the situations in those cases were much different from that in the instant case.

██ In the instant case the State's Attorney made the following statement in his closing argument:

> "Because when decent, honorable, working people in the community are going to their homes where they live and where they have a child they are trying to raise, they have to on the very threshold of the place, where they expect security so they don't have to worry about attack by an animal such as this, with a gun—"

This was objected to; the court overruled the objection, and said the jury was instructed to rely on the evidence which it heard.

In support of its contention the defendant cites People v. Payton, 72 Ill App2d 240, 218 NE2d 518, in which case the prosecutor repeatedly referred to the defendant as a "beast." In People v. Caylor, 386 Ill 501, 54 NE2d 514, the State in its argument said to the jury at page 505:

> ". . . the only way these kind of people are going to be put out of circulation, these morons that hang around in various places that we catch them at whether it is in automobiles, basements, furnace rooms of churches or any place else, the only way that they are going to be taken off the streets is by juries."

An objection was made to this statement which was overruled by the court. In its opinion in the case the Supreme Court said:

> "These remarks were not directed personally to the defendant . . . but the State's Attorney was calling the attention of the jury, urging it to properly administer the law in cases of this character. The State's Attorney in his argument has a right to dwell on the evil results of a crime and to urge a fearless administration of the criminal law and to

173

comment on the conduct of the accused. [Citing cases.]"

The case before us falls within that rule.

■ In this court the defendant also makes an issue of the fact that in his closing argument the prosecutor calls attention to the fact that the defense counsel had said, "Where is the clothing?" and also stated, "It's not in evidence." The prosecutor said, "But the police have the clothing. Where is the clothing? The clothing is in the courtroom. He's still got it. Hold up the box, Officer? Do you want to open it?"

■ The State's Attorney said he could have objected to the first statement of defendant's counsel. Counsel for defense objected to the argument and moved for a mistrial, which motion the court denied. It would appear that the remark made by the prosecutor was improper; however, it is not so prejudicial that it would constitute reversible error.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.