THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENNIE PRICE, Defendant-Appellant.

(No. 70-156;

Fifth District—August 14, 1972.

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This appeal is brought by Bennie Price, hereinafter referred to as defendant. Defendant seeks reversal of his jury conviction of attempted murder in violation of Ill. Rev. Stat. 1933, ch. 38, par. 8—4, on July 2, 1969, in the Circuit Court of St. Clair County. After a hearing on aggravation and mitigation, the defendant was sentenced to a term of not less than eight (8) nor more than fifteen (15) years in the Illinois State Penitentiary.

As a basis for reversal on appeal the defendant urges the following errors:

(1) The jury was improperly instructed as to the nature of the crime charged.

(2) The introduction of evidence of other crimes prejudiced the jury against the defendant.

(3) The argument of the prosecution was designed to prejudice and inflame the jury against the defendant.

(4) The State failed to prove with credible evidence the defendant's guilt beyond a reasonable doubt.

(5) The sentence imposed of eight (8) to fifteen (15) years was excessive.

The facts which gave rise to the conviction originated on April 7, 1969, in the morning hours when one Donald Davis was driving on Bond Avenue in East St. Louis, Illinois. He was confronted by a person known to him as Bennie Price, the defendant herein, an acquaintance of some four years. Price, having summoned Davis to halt, accused Davis of being a "traitor" in connection with an alleged robbery of a Concentrated Employment Program located in East St. Louis. The defendant accused Davis of turning State's evidence against Raymond Sharp in regard to the aforementioned robbery. A discussion ensued between the two regarding the robbery and they agreed that they would meet later in the morning at Raymond Sharp's home located on the 700 block, Gray Boulevard, East St. Louis, Illinois.

After Davis transported his girl friend to work, he went to Sharp's apartment and was admitted by Raymond Sharp. Also present in the apartment was the defendant who at the time was changing clothes in an adjoining room. The defendant entered the room and another conversation ensued as to the accusations made by the defendant, which Davis vehemently and continually denied. Heated and impassioned words were used by the defendant as he continued to become more embroiled. Then the defendant returned to the bedroom and was standing in the doorway of the adjoining room with his left hand concealed. The defendant continued to accuse Davis of being a traitor, to which Davis responded in the negative. As the defendant became more hostile, he grabbed Davis by the collar and began waving a gun in Davis' face. After Davis attempted to verbally dissuade the defendant from using the firearm, the defendant responded in an incoherent manner. Seconds later the gun discharged with the defendant in control of the gun some four feet from Davis with the projectile from the defendant's weapon narrowly missing Davis' head.

A struggle for the weapon commenced and the victim was able to wrestle the gun from the defendant. In disarming the defendant Davis testified that the gun "went off again. It hit my hand right here * * *." Although the gun did not fire, the trigger caused a slight injury which drew blood on Davis' hand. The victim told the defendant that the defendant was trying to kill him and that the defendant would not have any further opportunity. Davis proceeded to leave Sharp's apartment and other verbal exchange between Davis and the defendant was had in which Davis reiterated that he wasn't going to afford the defendant another opportunity to kill him.

Davis proceeded to the East St. Louis Police Station where he delivered the weapon, a .38-caliber revolver, to Lieutenant William F. Johnson, Sr. Johnson testified that the weapon, when delivered to him on April 7, 1969, at 9:15 A.M., had five live cartridges and one spent cartridge. Davis was observed to be bleeding from the hand and finger area by the police officer.

The defendant testified that he in fact caused the gun to be discharged but that he shot the gun into the ceiling instead of at Davis. This statement was contradicted by two later witnesses, one of whom was Davis, who testified that the bullet was not discharged into the ceiling but went into a wall of an adjoining hall, having passed through the doorway and coming to rest in the wall at a level consistent with Davis' height.

The defendant first contends that the jury was improperly instructed as to the nature of the crime charged. The defendant was charged in the Bill of Indictment with "the offense of Attempt in that he, with intent to commit murder shot at Donald Davis with a gun with intent to kill the said Donald Davis without lawful justification". The court gave People's Instruction No. 2, a modified version of IPI Criminal No. 7.01. As given it read:

"No. 2—A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual. IPI—Criminal No. 7.01"

■■ The charge in the indictment is attempt to murder with intent to kill; it did not include the alternative elements of intent to do great bodily harm, or knowledge that the acts will cause death or create a strong probability of death or great bodily harm. Defendant contends that as a result the instruction should have only contained the element of his intent to kill. Instructions should inform the jury and are not to mislead it. (*People v. Lewis*, 112 Ill.App.2d 1, 250 N.E.2d 812.) It is not improper to give an instruction on the elements of the crime attempted. In *People v. Gersbacher*, 44 Ill.2d 321, 255 N.E.2d 429, it was held that while failure of the court to give an instruction on murder, where one of the charges was attempt to murder, "it would have been preferable to instruct the jury, on the elements of the crime attempted". Here, both I.P.I. Criminal Nos. 6.07 and 6.05 were also given. In view of the language of the indictment and the instructions given we do not find People's No. 2 to be misleading.

■■ Defendant contends evidence of other crimes prejudiced the

jury against the defendant. On direct examination defendant testified that it was his feeling that Davis had involved him in the charges arising from the robbery of the agency for which defendant had worked, and when asked whether he was "actually involved in that", an objection by the State was sustained. He also testified that when he was asking Davis about the alleged robbery, Davis advised that one Lewis had furnished defendant's name as one involved in the robbery in order to get Lewis's name dropped, but that "Lewis already told me Davis was the one that named me to take his place". On cross-examination, after testifying concerning the agency, defendant admitted that he had been indicted for robbing the agency approximately two weeks after "the names had been named". On cross-examination defendant further testified that he was not angry about Davis turning State's evidence, but was angry about Davis getting his own name dropped from those charged with the robbery "and giving my name to replace him". He then went on to testify "I am not angry because I am indicted. I have three or four indictments on now". The test for admission of evidence concerning the introduction of other crimes is based on whether there is independent relevancy. (*People v. Lehman,* 5 Ill.2d 337, 125 N.E.2d 506.) The case of *People v. Moore,* 35 Ill.2d 399, 220 N.E.2d 443, illustrates that care must be exercised in introducing such evidence. The evidence that was introduced in this case was without question relevant in that it was necessary and relevant to prove the requisite intent. (*People v. Weeks,* 86 Ill.App.2d 480, 230 N.E.2d 12.) As stated in *People v. Barnes,* 2 Ill.App.3d 461, 276 N.E.2d 509, "Evidence which discloses that an accused committed crimes other than the one charged is admissible where such evidence is relevant to a contested issue in the case and tends to establish the crime charged. [Cases cited.]"

■■ The defendant contends that the State's Attorney's argument to the jury was designed to prejudice and inflame the jury against him. The prosecutor referred to the defendant as a maladjusted individual who would threaten anyone. There was substantial basis in the evidence for many of the remarks made and inferences suggested. Some of the statements made were subject to objection, the most severe ones were objected to and the objection sustained. We do not condone the statements of the prosecutor but conclude that they are not of such magnitude to cause reversal of this case. *People v. Dukes,* 12 Ill.2d 334, 146 N.E.2d 14; See also *People v. Welton,* 96 Ill.App.2d 167, 238 N.E.2d 141 and *People v. Mizzano,* 360 Ill. 466, 196 N.E. 439.

Next the defendant urges that the State failed to prove the defendant's guilt beyond a reasonable doubt. The language of the attempt statutes, Ill. Rev. Stat., ch. 38, sec. 38—4 states: "A person commits an

attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense". The defendant cites *People v. Gilday,* 351 Ill. 11, 83 N.E. 537, for the proposition that the State must specifically prove that defendant's acts were done with the specific intent to commit murder. The facts of the *Gilday* case are quite dissimilar to those of the present case. The defendant in that case contended that he was not only drunk but also afraid of being robbed when he shot at the victim. The court found in that case, the absence of the requisite intent. In the present case the victim testified:

"Then I noticed him standing in the doorway and there wasn't any door there. He had his left hand behind his back and he said, you are a traitor, and I said, no matter what you say I am not a traitor, like that, and he took the gun and he said, I say you are a damn traitor, and he grabbed me by the collar and I said, Bennie, Bennie, get the gun out of my face, and he said what, and then he shot. The bullet come by my head, I seen the flash, and I went for the gun and I grabbed his hand and I was wrestling with the gun, and at that time Raymond said, hold it, man, give me the gun, and I said no, no, you will give it to Bennie, I give it to you, just like that, and I said no. And we kept on wrestling for the gun and I twisted it out of his hand and pushed it back and I was going to shoot him and Raymond said, hold it, Chief, don't shoot it. I said, you are trying to kill me Bennie, but you won't get the chance no more."

Defendant did not deny he called the complaining witness a traitor. He admitted that he did hold the gun four feet from the complaining witness' head and pointed it at his head, but denied any intent to shoot him, saying that if he intended to shoot him, he would not have missed. Defendant said he shot into the ceiling but the lessee of the apartment said the bullet hole was in the wall in the hallway. The testimony shows that the complaining witness was moving at the time of the shot and that the bullet narrowly missed his head. There was sufficient credence to the evidence of the State's witness, that the jury could believe their version and reject that of the defendant.

■■ There is ample evidence that the defendant performed acts which constituted attempt to murder as defined by the statutes of this State. This Court will not substitute its judgment for that of the jury as the trier of the fact unless the verdict is "so unreasonable, improbable or unsatisfactory as to justify entertaining any reasonable doubt as to guilt". *People v. Richards,* 120 Ill.App.2d 313, 256 N.E.2d 475; *People v. Harris,* 1 Ill.App.3d 22, 272 N.E.2d 403.

■■ Defendant, at the hearing on aggravation and mitigation, put

into evidence his honorable discharge from the Air Force after serving four and one half years and a summary of his record in that service, which included various awards and a good conduct medal. He presented a history of Sunday School attendance, and witnesses who testified who testified of his good reputation in the community. It was undisputed that he had been captain of his high school football team and spent a year at Tennessee State University where he made honor grades before leaving to enlist in the Air Force. By cross-examination the State injected into the hearing various arrests and alleged involvement in criminal acts. The State's only witness was a records clerk from the police department who was lead to testify from his knowledge of the records and conversations with other police that defendant was a militant and over objection was allowed to testify that defendant could at times be considered dangerous. The defense attorney demolished the credibility of this conclusion in cross-examination which revealed that the witness had no actual knowledge of defendant's character. The evidence was incompetent and should have been disregarded by the court. No evidence of any prior conviction was presented. Arrests or other encounters with the law which have not resulted in convictions are inadmissible at the hearing in aggravation and mitigation in arriving at the punishment for the crime charged. *People v. Jackson,* 95 Ill.App.2d 193, 238 N.E.2d 196; *People v. Grigsby,* 75 Ill.App.2d 184, 220 N.E.2d 498.

■■■ In *People v. Evrard,* 55 Ill.App.2d 270, 204 N.E.2d 270, we held that characterization of a defendant as a member of a class responsible for much socially unaccepted conduct invalidated a sentence. In *People v. Riley,* 376 Ill. 364, 33 N.E.2d 872, 134 A.L.R. 1261, our Supreme Court said:

"Obviously the trial judge owes the same duty to the defendant to protect his own mind from the possible prejudicial effect of incompetent evidence that he would owe in protecting a jury from the same contaminating influence. The prosecutor in such circumstances owes the duty of not only protecting the defendant but also the judge from such prejudicial matter." 376 Ill. 369.

A sentence should serve not only to punish defendant but also to rehabilitate him. The hope for early release has been recognized as an incentive for rehabilitation. (*People v. Lillie,* 79 Ill.App.2d 174, 233 N.E.2d 716.) There is nothing properly in this record that indicates that defendant cannot be rehabilitated and become a useful member of society. The evidence presented at his trial, concerning the motive and circumstances of the commission of the crime, is of such nature as to warrant some punishment by incarceration. The penalty provided by statute, ch. 38, sec. 4 (c) (1) provides a maximum of 20 years, with

no minimum prescribed, which indicates that courts are allowed a wide discretion in determining the sentence. The sentence imposed does not provide sufficient opportunity for the parole authorities to determine defendant's possibilities of rehabilitation.

We accordingly reduce the minmum sentence imposed to five years, and as so modified the judgment is affirmed.

Judgment affirmed as modified.

G. MORAN and JONES, JJ., concur.