THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERMAN PICKETT, Defendant-Appellant.

(No. 60657; ▮▮▮▮▮

First District (2nd Division)—December 9, 1975.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and James M. Sammons, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Herman Pickett, defendant, tried by a jury, was found guilty of resisting arrest (Ill. Rev. Stat. 1971, ch. 38, par. 31—1) and acquitted of a battery charge. Defendant was sentenced to one-year probation.

On appeal defendant raises the following issues for review: (i) was the complaint legally sufficient; (ii) did the trial court improperly exclude a photograph of the defendant and evidence of a subsequent beating inflicted on defendant by one of the arresting officers; (iii) did two contradictory jury instructions confuse and prejudice the jury; (iv) was the evidence presented sufficient to support the jury verdict of guilty of resisting arrest; and (v) was the acquittal of battery inconsistent with a verdict of guilt of resisting arrest.

Defendant was arrested during an episode resulting from a conflict over a parking space and charged with battery and resisting arrest. The complaint charging defendant with resisting arrest read:

> "* * * Herman PICKETT has, on or about 16 June 1971 at 1758 West Harrison committed the offense of Resisting Arrest in that he knowingly resisted Patrolman Allan SCACCIA in the performance of his duties as a peace [sic] officer by punching and kicking Patrolman SCACCIA knowing at the time he resisted Patrolman SCACCIA a peace officer [sic]."

The State was granted a pretrial motion in limine, over objections of defendant, to exclude as irrelevant any events subsequent to the incident on the street which resulted in the charges before the court. As a consequence, the defendant was prevented from introducing any evidence of a beating allegedly administered to defendant by Officer Schmidt, one of the arresting officers, sometime after defendant left the scene of the incident.

Prior to trial defendant moved to have the resisting arrest complaint dismissed for failure to sufficiently allege the elements of the offense. The trial court in denying the motion ruled the words "in the performance of duties" presupposed the officer was performing an authorized act.

At trial Juliette Vartanian testified that on June 16, 1971, she brought her husband to Presbyterian-St. Luke's Hospital, left him at the door of the hospital and proceeded to look for a place to park her car. As she attempted to back her car into a vacant space on Harrison Street, a black Chevy with three black youths pulled frontward into the same space. She got out of her car, which was partially in the space, and went back to the Chevy and asked the boys in the car why they pulled into her space. Vartanian identified the defendant as a passenger in the back seat of the Chevy. She testified that he and the other boys merely laughed at her and someone in the back seat said "go ---- yourself." She testified she waved at a police car which stopped, and explained her situation to the uniformed patrolmen in the car, Officers Schmidt and Scaccia. Officer Schmidt went over to the Chevy and had a conversation with the youths; that she heard the officer tell the boys they were under arrest; and that the boys got out of the Chevy and a struggle occurred between defendant and the officers. She further testified that defendant told the gathering crowd that she had taken his parking space; that when defendant was told he was under arrest, defendant told the officer to come and get him; and that defendant hit Schmidt when he tried to hold him, and when Scaccia tried to stop the fight, defendant also hit and kicked him. Several assist police cars came, summoned by the arresting officers, and defendant was eventually handcuffed and taken away.

Vartanian identified defendant as the only person in the car wearing his hair in pigtails and identified him as the person pictured in a photograph introduced by the State. On cross-examination Vartanian testified she didn't hear much of the conversation between the officer and the youths, but she knew it was a heated argument; that she heard the officer say something to the effect that the boys were under arrest. She was cross-examined concerning an earlier statement to an investigator that she never heard the officer tell the boys they were under arrest and her description of the incident to the Department of Internal Affairs in which she made no mention of the defendant being put under arrest. On redirect examination she again stated she did hear one of the officers tell defendant he was under arrest prior to the ensuing struggle.

Officer Scaccia, a Chicago police officer, testified he and his partner were flagged down by a woman near the hospital about 3 p.m. on June 16, 1971; that his partner was Officer Schmidt; that both were in uniform and driving a marked police car; and that the police car stopped about three to five feet from the Chevy. The woman spoke to his partner, Officer Schmidt, the driver, and told him what had happened. The persons in the black Chevy were allegedly yelling statements to the effect the

police were going to make them move because they were black and the lady was white. Scaccia identified the defendant as the person he saw in the back seat of the Chevy; he testified that defendant wore his hair in pigtails as did the driver of the car. This officer identified the driver as the person pictured in the State's exhibit identified by Vartanian as defendant. Scaccia testified his partner went over to the car and talked with the boys and told them to be quiet or he would have to arrest them. Scaccia got out of the police car, but when the yelling continued, he returned to the police car and called for help. At this point the witness allegedly heard the defendant say it would take more than two of them to arrest him. The witness heard Schmidt tell defendant he was under arrest, the boys got out of the car, and a struggle ensued between the officers and defendant. Defendant was telling the gathering crowd it would take more than two to arrest him, and he dared them to place him under arrest. The officer alleged the defendant kicked and punched him in the head and chest and kicked him in the groin during this struggle. After a group of other officers summoned by the witness arrived at the scene, defendant was subdued, handcuffed and taken away. Scaccia testified his inner lip was bleeding and his clothes were ripped as a result of the struggle. The witness was not questioned on cross-examination about placing defendant under arrest.

The State presented two other witnesses, one a Chicago police officer and the second a hospital employee, who also testified to the events surrounding the defendant's arrest, but neither of these witnessses testified they actually heard the officer place defendant under arrest.

Officer Redding, a Chicago police officer, testifying on behalf of the defendant, testified he was called to the area around St. Luke's Hospital on June 16, 1971, to assist a patrol car; that when he arrived at the scene with his partner there were two struggles going on about 30 feet apart; that one struggle involved defendant and about three officers; that he assisted in the arrest; and that the defendant did not offer any resistance to him. Redding could not recall defendant's hairstyle, but he did recall defendant's nose was bleeding when he was taken away.

Larry Morris testified on behalf of the defendant that he was with the defendant and one Columbus Jones when they attempted to park on Harrison Street; that the lady got upset and flagged down a squad car which pulled next to them; that Officer Schmidt came over and asked Jones for his license and no one said anything; that he then returned to his car to make a call; that the officer returned and asked them to vacate the parking space, but they refused; that the defendant started arguing with Schmidt and Schmidt told defendant to shut up; that Schmidt got a billy club and put on black gloves and they again refused his request

to move on but got out of the car when told to do so, but that no one had told them they were under arrest; that thereafter a general brawl took place and defendant was trying to evade Schmidt but never tried to hit Schmidt; that Scaccia was not in the fight; and that they were never placed under arrest.

Three eyewitnesses, one occupational therapist and two nurses, testified on behalf of the defendant that the police asked the defendant and companions to move, and when they refused, an officer put on a glove and a struggle followed; that defendant did not wear his hair in pigtails, and that he did not strike the officers; and one of the witnesses testified that she did not hear the words "under arrest" prior to the struggle.

Columbus Jones testified he was driving a black 1961 Chevy that afternoon; that the defendant had a low cut natural hairstyle that afternoon; that Larry Morris had a large natural hairstyle; and that Plaintiff's Exhibit 1 was a picture of himself in pigtails. The balance of Jones's testimony concerning the incident corroborated that given by other defense witnesses.

Defendant's mother testified she had seen the defendant prior to the alleged incident and that his hair was not in pigtails; she also identified a photograph of defendant with a hairstyle the same as it was on defendant June 16, 1971.

The defense also made an offer of proof as to the testimony defendant's mother would give regarding her son's condition in the hospital after the alleged incident. Offers of proof were also made as to the testimony of the physician and nurse who attended defendant subsequent to his arrest and the injuries sustained by the defendant. The latter offer of proof by the defendant was offered to affect the credibility of Officer Scaccia.

The testimony of the defendant as to the incident was similar to other defense witnesses in most respects. The defendant testified that Officer Scaccia did not tell him or seek to place him under arrest and did not hit him during the incident; and that he was trying to keep out of Officer Schmidt's way.

The defendant attempted to introduce a photograph of defendant taken by the police crime lab two days after the incident. The purpose of the photograph was to refute the State's testimony regarding defendant's hairstyle. The court ruled this photograph was not admissible because sufficient evidence had already been presented on that issue.

The court gave two instructions on the elements which must be proved to find defendant guilty of resisting arrest. As commented on later in this opinion, one of these instructions contained the element of compul-

sion and the other did not. The same procedure was followed for the battery instructions.

The jury returned a verdict of guilty as to resisting arrest and not guilty as to battery. Defendant thereafter moved for an order in arrest of judgment asserting that the complaint failed to set out an offense, and also moved to vacate the jury's verdict. After each motion was denied, the trial court sentenced the defendant to one-year probation.

## I.

We first consider the sufficiency of the complaint. The Illinois Criminal Code of Procedure, section 111—3 (Ill. Rev. Stat. 1971, ch. 38, par. 111—3), so far as pertinent, requires:

> "(a) A charge shall be in writing and allege the commission of an offense by:
> (1) Stating the name of the offense;
> (2) Citing the statutory provision alleged to have been violated;
> (3) Setting forth the nature and elements of the offense charged;
> * * * ."

That charge may take the form of a complaint. (Ill. Rev. Stat. 1971, ch. 38, par. 111—1.) The charge must be sufficiently specific to enable the defendant to prepare an adequate defense and to allow pleading a resulting conviction or acquittal as a bar to any future prosecution arising out of the same conduct. *People v. Grant* (1974), 57 Ill.2d 264, 267, 312 N.E.2d 276; *People v. Grieco* (1970), 44 Ill.2d 407, 409, 255 N.E.2d 897, *cert. denied*, 400 U.S. 825, 27 L.Ed.2d 54, 91 S.Ct. 49.

In the case at bar the complaint specifically charges defendant with "[r]esisting Arrest in that he knowingly resisted Patrolman Allan SCACCIA in the performance of his duties as apeace [*sic*] officer by punching and kicking Patrolman SCACCIA knowing at the time he resisted Patrolman SCACCIA a peace officer. [*sic*] in violation of Chapter 38 Section 31—1." "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity * * * *" violates section 31—1 of the Criminal Code.

■■ Defendant contends the charge in the case at bar is void for failure to allege the officer was performing an authorized act within his official capacity. *People v. Leach* (1st Dist. 1972), 3 Ill.App.3d 389, 394, 279 N.E.2d 450, dismissed a complaint charging a defendant with resisting or obstructing a police officer for failure to allege the peace officer was performing an authorized act within his official capacity. The complaint in *Leach* never alleged the officer was performing any authorized act,

and the court held this was a failure to set forth an element of the offense, subjecting the complaint to dismissal. The complaint in the case at bar does allege the officer was acting in the performance of his duties as a peace officer, and the trial court ruled the words "in the performance of duties" presupposed the officer was performing authorized acts. Thus the trial court reasoned that the offense was properly alleged in the complaint.

Peace officers, as was Officer Scaccia, are authorized to make arrests and such an act is within the officer's official capacity. See *People v. Shinn* (3rd Dist. 1972), 5 Ill.App.3d 468, 472, 283 N.E.2d 502.

In our opinion the complaint sufficiently alleged the elements of the statutory offense of resisting or obstructing a peace officer so as to allow defendant to know the specific charge against him, to prepare a defense and protect himself against further prosecution arising from the same conduct. See *People v. Dickerson*, 61 Ill.2d 580, 338 N.E.2d 184.

## II.

Defendant next challenges the trial court's ruling as to the exclusion of evidence regarding a subsequent beating of the defendant by one of the arresting officers and a photograph of defendant.

## A.

Defendant contends the trial court erred in preventing defendant from offering any evidence to the jury of a beating received by defendant at the hands of Officer Schmidt subsequent to the incident. The excluded evidence concerned a beating of defendant by Officer Schmidt with resulting injuries after defendant was arrested and placed in a police vehicle, as well as the nature and extent of the resulting injuries along with evidence to establish the conviction of Officer Schmidt in Federal court as a result of the beating inflicted upon defendant. After listening to arguments pro and con, the trial court granted the State's motion in limine prior to the start of the trial. Defendant urges this evidence should have been allowed to impeach the credibility of Officer Scaccia, thereby showing his bias against defendant since he was Schmidt's partner, and also to prove the defense of compulsion.

Defendant correctly points out that evidence may be introduced to show a witness's bias or motive to falsely testify against the defendant. (*People v. Vagil* (2nd Dist. 1973), 9 Ill.App.3d 726, 729, 292 N.E.2d 557.) However, in *Vagil* the witness himself was involved in a crime for which he was not prosecuted in exchange for his testimony against defendant. On the other hand in the case at bar there has been no allegation the witness Scaccia had inflicted a beating on defendant, or that

the effect of the Federal court action against Schmidt in any way induced Scaccia to testify against defendant.

■■ In order to be admissible the evidence showing bias or a witness's feelings toward a party must be direct and positive—not remote or uncertain. (See *People v. Hanks* (4th Dist. 1974), 17 Ill.App.3d 633, 638, 307 N.E.2d 638.) In *Hanks* this court affirmed the trial court's refusal to allow defense counsel to cross-examine a witness regarding that witness's alleged subsequent misconduct wihch might have given him a motive to falsify his testimony against defendant. We believe the language of *Hanks*, at page 637, is equally applicable in the case at bar:

"The defendant in this case seeks to extend the parameters of cross-examination of a witness in order to show bias much beyond present permissible limitations. He would extend defendant's cross-examination rights to matters dealing with alleged or purported previous dishonest acts or misconduct beyond matters dealing with actual arrest or charge, * * *."

In the case at bar there was no offer of proof to show any misconduct of the witness Scaccia either at the time of the incident or at any time subsequent thereto. It was merely argued because the witness's partner was involved in subsequent misconduct the witness would bear ill will toward the defendant and testify falsely against him. It appears from the offers of proof that the subsequent events concerning the defendant and Schmidt were dealt with separately in a Federal proceeding and evidence of these subsequent events are too collateral and uncertain to be introduced against Officer Scaccia in the present proceeding.

We have carefully examined the cross-examination of Scaccia. He was cross-examined as to the events that took place on Harrison Street, as to statements subsequently given by Scaccia to the Internal Affairs Division of the Chicago Police Department, as to testimony made in the United States District Court, and as to the officers' case reports. In fact it is difficult to imagine a more thorough cross-examination than that conducted by the competent and experience defense counsel.

■■ Contrary to defendant's arguments, the evidence offered did not show the beating by Schmidt was administered to prevent defendant from testifying on his behalf as in the case cited by defendant, *People v. Smith* (4th Dist. 1972), 3 Ill.App.3d 958, 279 N.E.2d 512.

■■ The scope of cross-examination of witnesses is largely within the discretion of the trial judge and his decision will not be interfered with unless his ruling is clearly abusive and prejudicial to the accused. (*People v. Bridgeforth* (1972), 51 Ill.2d 52, 65, 281 N.E.2d 617.) In all criminal cases it is important that the evidence be fairly limited to the issue on trial, as collateral or extraneous matters can only mislead or

prejudice a jury. In our opinion the trial court did not abuse its discretion with respect to the cross-examination of Scaccia, nor did it abuse its discretion in allowing the State's motion in limine to exclude evidence of the events which were subsequent to the crime with which the defendant was charged. See *People v. Raby* (1968), 40 Ill.2d 392, 403, 240 N.E.2d 595, *cert. denied,* 393 U.S. 1083, 21 L.Ed.2d 776, 89 S.Ct. 867.

## B.

Defendant contends a photograph taken of the defendant by the Chicago police crime lab one or two days after the incident in question should have been admitted to show defendant did not wear his hair in the style alleged by the State's witnesses and to show the condition of the defendant's face. The trial court, out of the presence of the jury, conducted a lengthy discussion between counsel about the photograph and permitted a voir dire examination of Officer Scaccia concerning whether the photograph depicted the defendant at the time of his arrest. Scaccia testified the photograph did not, and pointed out the difference in the hairstyle and the swollen condition of defendant's face. The trial court refused to admit the exhibit but did permit, in the presence of the jury, defendant to cross-examine Scaccia concerning the exhibit.

It is fundamental that any legal evidence is admissible if it has a natural tendency to establish the facts in controversy. In order to determine whether evidence is admissible, the trial court must determine whether the evidence is relevant, material and competent. (14A Ill. L. & Pr. Criminal Law § 261 (1968).) In any criminal trial a defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt as to his guilt. (*People v. Bergeron* (1st Dist. 1973), 10 Ill.App.3d 762, 769, 295 N.E.2d 228.) With these precepts in mind, we examine the issue concerning the photograph.

Admission of photographs is always within the trial court's discretion and should not be grounds for reversal absent a manifest abuse of that discretion. See *People v. Hayes* (1st Dist. 1973), 14 Ill.App.3d 248, 253, 302 N.E.2d 411; *People v. Schwing* (1st Dist. 1971), 133 Ill.App.2d 100, 103, 272 N.E.2d 779.

■■ The photograph in this instance showed defendant one or two days after the arrest. The photograph did not portray the condition of the defendant at the critical time of the incident on Harrison Street. Therefore the photograph was not a true and correct representation of the condition of the defendant on the date and hour of the incident. The trial court noted there was evidence before the jury on the issue of defendant's hairstyle, both from the State's witnesses as well as the witnesses

of the defendant. We conclude that under these circumstances the court did not abuse its discretion in excluding the photograph from the jury.

## III.

Defendant contends the instructions given by the trial court were inconsistent, erroneous and misleading. Over the objections of the defendant, the trial court gave instruction IPI—Criminal § 24.20 tendered by the State which defines the use of force by a private person in resisting arrest. The trial court also gave defendant IPI—Criminal § 24.21, tendered by the defendant, defining compulsion. The instructions pertinent to resisting arrest as given by the defendant were:

> "It is a defense on the charge made against the Defendant that he acted under the compulsion of threat or menace of the imminent infliction of death or great bodily harm if he reasonably believed death or great bodily harm would be inflicted upon him if he did not perform the conduct with which he is charged.
>
> \* \* \*
>
> A person commits the crime of resisting or obstructing a Peace Officer, who knowingly resists or obstructs the furtherance of any authorized act by one known to be a Police Officer.
>
> A person who [sic] is not authorized to use force to resist an arrest which he knows is being made by a Peace Officer, even if he believes that that arrest is unlawful and the arrest in fact is unlawful.
>
> To sustain the charge of resisting or obstructing a Peace Officer, the State must prove the following propositions: First, that Allen Scaccia was a Peace Officer, and second, that the Defendant knew Allen Scaccia was a Peace Officer and, third, that the Defendant knowingly resisted or obstructed the performance of an authorized act by pushing and kicking Patrolman Allen Scaccia. \* \* \*
>
> To sustain the charge of resisting or obstructing a Peace Officer, the State must prove the following propositions. First, that Allen Scaccia was a Peace Officer; and, second, that the Defendant knew Allen Scaccia was a Peace Officer; and, third, that the Defendant knowingly resisted or obstructed the performance of an authorized act by Allen Scaccia; and, fourth, that, the Defendant did not act under compulsion."

Thus, as to the resisting arrest charge, the trial court gave two instructions, one as tendered by the State which did not refer to the defense of compulsion, the other tendered by the defendant which included the element of compulsion. Defendant strongly urges that the instructions confused the jury and the defendant was prejudiced as the defense of

compulsion was absent from one set of instructions. The trial court followed the same procedure for the battery charge; however, the jury found the defendant not guilty on that charge.

Defendant points out that *People v. Clinkscales* (1st Dist. 1974), 19 Ill.App.3d 173, 175, 311 N.E.2d 253, clearly states it is error for the court to set out the elements of the offense of resisting arrest without requiring that the State negate a defense of compulsion. In the case at bar the court did give an instruction including the necessity of negating compulsion for the defendant but also gave the instruction offered by the State which made no reference to the element of compulsion.

The Illinois Supreme Court, in *People v. Willy* (1921), 301 Ill. 307, 331-32, 133 N.E. 859, stated:

> "Beyond question it is the rule that instructions in a case should be taken as a series, and one instruction is not required to state the whole law in itself; [citation] *but it is also the rule that instructions that are not in harmony, one being correct and the other incorrect, should not be given,* as it cannot be told which instruction the jury followed." (Emphasis added.)

Instructions to a jury should not be repetitive (*People v. Rhodes* (1969), 41 Ill.2d 494, 500, 244 N.E.2d 145), and should not be misleading. *People v. Price* (5th Dist. 1972), 7 Ill.App.3d 110, 114, 286 N.E.2d 530.

Defendant cites *People v. McCoy* (1st Dist. 1967), 80 Ill.App.2d 257, 225 N.E.2d 123, as involving an issue identical to the instant case. In *McCoy* two instructions tendered by the defendant were given on the proof of the defense of accidental killing, one of which was clearly erroneous. The erroneous instruction informed the jury that the defense of accidental shooting had to be proved beyond a reasonable doubt. This court in reversing *McCoy* took the erroneous instruction into consideration as one of the factors concerning the competency of counsel. This court then reversed and remanded the cause for the reason McCoy did not receive adequate representation. In our opinion *McCoy* does not support defendant's position.

In *People v. Van Bussum* (1st Dist. 1966), 72 Ill.App.2d 428, 435, 436, 219 N.E.2d 695, the trial court gave two instructions on involuntary manslaughter. One instruction, submitted by the State, was in the language of the statute, the second, submitted by the defendant, added the words "with wilful and wanton negligence." This court in affirming noted the second instruction was the defendant's theory of the case and no error was committed in giving both instructions.

■■ In our opinion the two sets of instructions should not have been given. As the same procedure was followed for the battery charge and the jury found the defendant not guilty, it is difficult to see how the

jury was not prejudiced or confused on the battery charge and was on the resisting arrest charge. In our opinion, as the defendant's theory of the case was presented in the instruction, we find no prejudicial error.

## IV.

Pointing to conflicts between testimony of the State's witnesses and the defendant's witnesses, defendant contends he was not proved guilty beyond a reasonable doubt. Defendant cites *People v. Bush* (1st Dist. 1972), 4 Ill.App.3d 669, 281 N.E.2d 734, a case involving a charge of resisting arrest and public indecency, in which the jury found Bush guilty of resisting arrest and not guilty of public indecency. This court reversed the conviction of resisting arrest because the defendant was not proved guilty beyond a reasonable doubt. In *Bush* the arresting officer was not in uniform, the defendant was 63 years old weighing 145 pounds, and the police officer weighed 180 pounds; and the injuries which defendant sustained at the scene of the incident were such that it was hard to believe he could have knowingly resisted the officer. In *Bush* the conviction rested solely on the testimony of the arresting officer whom the jury did not believe with respect to an indecency charge arising from the same series of events. As noted by this court in *Bush*, where there is a grave and substantial doubt of a defendant's guilt, it is the duty of this court to reverse a conviction for failure to prove defendant guilty beyond a reasonable doubt.

■■ In the case at bar there were several witnesses to the incident, and a determination of the credibility of these witnesses was properly a function of the jury. (*People v. Novotny* (1968), 41 Ill.2d 401, 412, 244 N.E. 2d 182.) Conflicting statements of Vartanian regarding the officer's notice to defendant that he was under arrest were presented to the jury for its resolution. Officer Scaccia testified the defendant was told he was under arrest prior to his resistance. The jury heard the account of the incident by the defendant and his companions and their admission they asked the officers what the charges were. There was conflicting testimony of the above witnesses as well as onlookers on the issue of defendant's hairstyle. These discrepancies were for the jury to balance; and while there may be disagreement about their conclusion, there was sufficient evidence in the record, if believed, to support the verdict of guilty of resisting arrest.

## V.

Finally, defendant contends the acquittal as to the battery charge and the conviction of the resisting arrest charge are inconsistent since they were based on the same set of facts.

██ While the testimony on which the two complaints are based was similar and intertwined, and it may be difficult to understand how a jury could find the defendant guilty from the testimony on one charge and not guilty on the other, the law in Illinois appears to be well established that a verdict need not be logically consistent so long as it is not legally inconsistent, especially when the crimes are composed of different elements. *People v. Hairston* (1970), 46 Ill.2d 348, 362, 263 N.E.2d 840, *cert. denied*, 402 U.S. 972, 27 L.Ed.2d 136, 91 S.Ct. 1658.

A logical inconsistency does not equal a legal inconsistency and such a verdict may well reflect nothing but an exercise by the jury of leniency. *People v. Hyman* (1st Dist. 1972), 8 Ill.App.3d 382, 385, 290 N.E.2d 627.

In our opinion the verdicts in the case at bar are legally consistent and should be affirmed. (*Cf., People v. Dawson* (1975), 60 Ill.2d 278, 326 N.E.2d 755, *cert. denied*, — U.S. —, 46 L.Ed.2d 54, 96 S.Ct. 61.) The crime of resisting arrest (Ill. Rev. Stat. 1971, ch. 38, par. 31—1) requires different elements of proof than a crime of battery. Ill. Rev. Stat. 1971, ch. 38, par. 12—3(a).

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.